Citation Nr: 1528202 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 08-39 610 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to an initial evaluation in excess of 10 percent for post-traumatic stress disorder (PTSD) during the period from July 16, 2007 to January 6, 2010.

 2. Entitlement to an initial evaluation for post-traumatic stress disorder in excess of 50 percent from January 7, 2010.
 
3. Entitlement to a total disability evaluation based on individual unemployability.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

M. Nye, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1966 to September 1968.

This matter comes to the Board of Veterans' Appeals (Board) from a January 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania, which granted entitlement to service connection for posttraumatic stress disorder and assigned a 10 percent rating effective July 16, 2007. The Veteran appealed. In a December 2010 rating VA assigned a 30 percent rating effective January 7, 2010. Following a March 2011 hearing before the undersigned the Board in a June 2011 decision granted a 50 percent rating effective January 7, 2010. In June 2011, the Board remanded the question what evaluation was warranted for PTSD prior to January 7, 2010.

The appellant appealed the Board's decision to the United States Court of Appeals for Veterans Claims. In February 2012, the Court granted a joint motion for remand, and vacated that portion of June 2011 Board decision which denied entitlement to a rating higher than 50 percent for PTSD from January 7, 2010. 

In October 2012, the Board remanded the case to the Appeals Management Center to obtain certain medical records identified by the Veteran and to arrange for a new medical examination. For the reasons stated below, the directives of the Board's October 2012 remand were complied with. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

The issue of entitlement to a total disability evaluation based on individual unemployability is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. The evidence is at least evenly balanced as to whether the symptoms and overall impairment caused by the Veteran's post-traumatic stress disorder more nearly approximated occupational and social impairment with reduced reliability and productivity prior to January 7, 2010.

2. Symptoms of the Veteran's post-traumatic stress disorder were not manifested by more than occupational and social impairment with deficiencies in most areas at any time since July 16, 2007.


CONCLUSION OF LAW

The criteria for a 50 percent rating, but no higher, for posttraumatic stress disorder, were met throughout the appeal period. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.130, Diagnostic Code 9411 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met. There is no issue as to providing an appropriate application form or with the completeness of the application. In August 2007, VA notified the Veteran of the information and evidence needed to substantiate and complete a claim, to include notice of what part of that evidence is to be provided by the claimant, what part VA will attempt to obtain, and how disability ratings and effective dates are determined. 

VA fulfilled its duty to assist the Veteran in obtaining identifiable and available evidence needed to substantiate a claim, and as warranted by law, affording VA examinations. VA obtained the Veteran's service treatment records, post-service records of medical treatment from a VA Medical Center, and certain counseling records from the Olney Vet Center. VA also arranged for the Veteran to be examined by a clinical psychologist in August 2008 and by a psychiatrist in January 2010. 

Pursuant to the joint motion for remand and the Board's October 2012 remand instructions, VA was instructed to obtain further records from the Olney Vet Center, specifically records of treatment for PTSD and depression between July 16 and September 30, 2007, as well as all records since July 2009. In November 2013, the AOJ mailed a written request for records directly to the Olney Vet Center. On the same day, the AOJ sent the Veteran a letter informing him that records from the Olney Vet Center had been requested. In January 2014, the AOJ sent the Veteran a second letter, which explained that the AOJ was unsuccessful in its attempt to obtain the requested records from the Vet Center directly. The letter further indicates that, if the Veteran desired the AOJ to make a second attempt to obtain the records, he should complete and return the enclosed form authorizing the Olney Vet Center to release the records to the AOJ. 

According to a report of general information, dated March 2014, an Olney Vet Center representative indicated that additional records could not be released without a written authorization from the Veteran. The report then describes a telephone call to the Veteran by a VA employee, in order to ask him to complete the necessary authorization. Unfortunately, the employee was not able to reach the Veteran by telephone. The report therefore determined that another written request to obtain the authorization should be sent to the Veteran. The claims file includes a copy of this letter, also dated March 2014. This letter was mailed to the address provided by the Veteran in his most recent prior correspondence to VA. It informed the Veteran that his application for benefits indicated treatment at the Vet Center and that, to provide copies of the requested records to VA, he should complete and return a written authorization which was enclosed with the letter. The Veteran did not respond to any of these letters.

While the AOJ did not, pursuant to the Board's October 2012 remand instructions, put in writing the reasons why further attempts to obtain the requested records would be futile, the Board finds that the AOJ substantially complied with the remand instructions. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (although under Stegall VA is required to comply with remand orders, substantial compliance, not absolute compliance, is required). Having documented one direct request for the records, one attempt by telephone to seek an authorization to obtain the records, and two written attempts to obtain the necessary authorization from the Veteran, it is clear to the Board that further attempts to obtain the requested records would be futile. The claimant has the obligation to cooperate with VA's reasonable efforts to obtain relevant records from non-Federal sources. See 38 C.F.R. § 3.159(c)(1). The AOJ complied with the Board's remaining remand instructions by arranging a third mental illness examination in December 2013. 

By taking these steps, VA complied with its duties to notify and assist the Veteran in this case. The Board will therefore proceed to the merits of the appeal. 

Analysis

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10. When two ratings are potentially applicable, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. 

To evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. See Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). 

Where an award of service connection for a disability has been granted and the assignment of an initial evaluation for that disability is disputed, separate evaluations may be assigned for separate periods of time. In other words, the evaluations may be staged. See Fenderson v. West, 12 Vet. App. 119, 127 (1999). Here, as explained below, a 50 percent evaluation for posttraumatic stress disorder is warranted throughout the appeal period.

A 10 percent rating for PTSD is warranted for occupational and social impairment due to mild or transient symptoms which decrease work effectiveness and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medication. 38 C.F.R. § 4.130, Diagnostic Code 9411. 

The criteria for a 30 percent rating for PTSD contemplate occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). Id.

The criteria for a 50 percent rating for PTSD contemplate occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing effective work and social relationships. Id.

A 70 percent rating is warranted when the psychiatric disorder results in occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such an unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and inability to establish and maintain effective relationships. Id.

The symptoms listed above are not exhaustive, but merely examples of symptoms having the severity which approximate particular degrees of occupational and social impairment. To award a specific rating, the Board does not need to find that the Veteran has all, most or even some of the listed symptoms. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). "If the evidence demonstrates that a claimant suffers symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the diagnostic code, the appropriate, equivalent rating will be assigned." Id. at 443.

Prior to August 4, 2014, one factor in evaluating psychiatric disorders was the global assessment of functioning score scale. The scale was meant to represent psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. See Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM -IV)). 

Under DSM-IV a global assessment of functioning score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). A score in between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). Effective August 4, 2014, VA regulations were amended to remove references to the DSM-IV, and to replace them with references to the Fifth Edition of American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM -V). See 79 Fed. Reg. 45,093-02, 45,094 (August 4, 2014). DSM-5 abandoned the global assessment of functioning score as a tool for evaluating the severity of psychiatric disorders. 

The December 2013 VA examiner, using DSM-5 criteria, did not assign a global assessment of functioning score. The Veteran's appeal of his initially assigned rating for PTSD, however, was certified to the Board before August 4, 2014, the effective date of the regulatory change. The effective date of the regulatory change implementing the DSM-5 criteria is August 5, 2014 only for applications for benefits that were received by VA or that were pending before the AOJ on or after August 4, 2014. The new provisions do not apply to claims certified for appeal to the Board or claims pending before the Board, the United States Court of Appeals for Veterans Claims, or the United States Court of Appeals for the Federal Circuit, prior to the effective date, even for claims, like the issues in this case, which were on remand to the AOJ after the effective date of the regulatory change. See 80 Fed. Reg. 14,308-01, 14,308 (March 19, 2015). For this reason, in spite of the regulatory change, the Board may consider the global assessment of functioning scores in the Veteran's examinations and medical records. 

Prior to 2007, the Veteran had no history of psychiatric treatment. He began counseling at the Olney Vet Center in August 2007. In the same month, the appellant was seen for his first VA compensation examination. The Veteran reported re-experiencing the traumatic events of combat, hyperarousal and avoidance. He had nightmares, approximately twice a month, chronic sleep difficulties and hypervigilance. The examiner indicated that the Veteran experienced flashbacks three or four times each year. During at least one of the flashbacks, the Veteran apparently mistook his wife for a Vietnamese soldier, and tried to choke her. 

The August 2007 examiner assigned a GAF score of 70, indicating "mild impaired functioning." At the time of the first examination, the Veteran had been employed full-time for more than 30 years. He was in his second year working as a manager for a private heating and ventilation company and reported good relations with supervisors and co-workers. The Veteran told the examiner that his job performance ratings were positive. Nevertheless, on the dates of the anniversaries of certain traumatic combat experiences, "[the Veteran] reported a mild decrease in occupational functioning, for example, difficulty concentrating and completing work tasks." 

The August 2007 examiner also reported mildly impaired social functioning. The Veteran had some close friends, with whom he went fishing, and he reported a positive relationship with his daughter. The Veteran reported having only a few friends and stated he felt detached from people who had not been involved in combat. He also reported constantly scanning his environment to "make sure I'm safe." He remained married, but indicated some marital strain on account of his attempt to choke his wife during a flashback. According to the examiner, the Veteran was alert and well-oriented, with normal speech and concentration. There was no evidence of suicidal or homicidal ideation. The Veteran told the examiner he had nightmares about combat about twice each month.

According to VA psychiatric treatment notes from October 2007, the Veteran reported recurring Vietnam-related nightmares weekly, which disturbed his sleep. He also reported anxiety, depression and irritability. But his insight and judgment were good. Treatment notes from December 2007 reported less frequent nightmares ("a few times a month"). In October 2007, a VA psychiatrist assigned a global assessment of functioning score of 55.

Treatment notes from 2008 and 2009 reveal that the appellant reported nightmares, irritability, feelings of isolation and hypervigilance. In March 2008, the appellant stated that combat-related nightmares took place "a few times a month." In January 2009, the Veteran told his psychiatrist that he expected an increase in the frequency of his nightmares due to the approaching anniversary of Tet, the Vietnamese New Year and the anniversary of a battle in which the Veteran was wounded in 1968. 

In June 2009, the Veteran "as anticipated, had a difficult time of it since his last appointment because of his anniversary reaction." He reported sleeping about five hours per night. This apparently refers to a second anniversary that coincides with heightened symptoms, as revealed in this June 2011 treatment note: "He is anticipating a nightmare because the anniversary of the death of a friend of his is coming up in June." According to the same note, the Veteran "continues to have periods of depression without suicidality." 

At a January 2010 VA compensation examination the Veteran reported nightmares, persistent and intrusive memories of Vietnam and feeling "on guard" most of the time. This time, the Veteran reported recurrent dreams of Vietnam an average of four nights per week. He also reported chronic insomnia, and sleeping only about four hours each night. He reported continuing to avoid crowds and showing little interest in social activities. In the opinion of the January 2010 examiner, "The patient continues to have significant psychiatric symptoms. These symptoms occur daily and last for most of the day. His psychiatric symptoms are the classic ones for [PTSD] anxiety [and] recurrent, unwanted memories of Vietnam . . . ." The examiner assigned a global assessment of functioning score of 46 ("This is based on the patient's significant psychiatric symptoms.")

By January 2010, the Veteran had been out of work since late 2008. He told the examiner that he was laid off due to the recession. The examiner wrote: "the Veteran is able to carry out his normal daily activities. The patient denies that his psychiatric symptoms ever seriously interfered with his ability to do full-time employment." The examiner described the Veteran's intellectual and cognitive functions as normal. He continued to deny suicidal and homicidal thoughts. Further, the appellant was noted to maintain close and regular contact with his relatives. He enjoyed having dinner with his wife, fishing and following baseball. 

An October 2010 treatment note indicates that the Veteran continued to report having combat-related dreams, but that he was sleeping five hours per night. In October 2011, the Veteran's treating psychiatrist indicated that the appellant was reporting combat-related dreams occurring "once or twice a month." In November 2012, he reported combat-related dreams "two or three times per month" and intrusive thoughts almost daily. Heightened symptoms continued to coincide with the anniversaries of traumatic events. 

The Veteran testified in a March 2011 videoconference hearing before the undersigned. The Veteran stated that he experienced flashbacks about twice monthly and that he saw a psychiatrist two or three times a year at the VA Medical Center in Philadelphia. The appellant reported receiving treatment at the Olney Vet Center until approximately September or October 2010, and that he was on medication for PTSD and depression. 

In March 2012 the Veteran "had a difficult time in [February] because it is an anniversary time for Tet 1968." In March 2013, his psychiatrist wrote that the "frequency of combat related dreams has decreased now that we are in the month of March. In addition he is less depressed and feeling more outgoing." In August 2013, the Veteran was "anticipating more intrusive recollections around Labor day which is an anniversary of a helicopter ride that almost ended in disaster for [the Veteran]. Otherwise, his mood is stable and he tries to enjoy life. He is taking golf lessons and finding his game improving." In November 2013 the Veteran was "relieved to have gotten through Veteran's day because that is one such time. He can now predict that he will not have serious difficulties until after the holidays." 

The Veteran's recent VA compensation examination took place in December 2013. He continued to report intrusive memories, nightmares and flashbacks. While nightmares continued to disturb his sleep, the examiner noted that "sleep has improved some (an addition[al] hour) with medication." 

The Veteran's social functioning remained limited due to his fear of crowds and sense of detachment. The appellant told the examiner that he continued to go fishing and golfing with a few close friends. He also said his relationship with his daughter had improved. The appellant denied that symptoms related to PTSD negatively impacted his relationship with his family. According to the Veteran, he and his wife "get along well" although sometimes his moodiness and irritability strains their relationship, especially around anniversary periods. 

With respect to occupational functioning, the Veteran remained out of work which he attributed to the recession and not to posttraumatic stress disorder. He reported good work performance and told the examiner that, prior to being laid off, he was managing 16 employees. The appellant "denied any concerns with his reliability, stating 'I went to work every day' even when he did not want to go." The examiner wrote that the Veteran was laid off "at the height of the recession." The appellant related that he had previously planned to retire at 62, but when he was laid off at 61 he decided to start retirement early. The Veteran "denied any change in occupational functioning since his previous evaluation." According to the Veteran, the increased time he spent alone in retirement resulted "in an increase in the frequency and intensity of his re-experiencing symptoms." Notably, the appellant continued to deny suicidal and homicidal ideation. He did report intermittent depressive symptoms. 

VA assigned a 10 percent rating and then increased that rating following the more serious symptoms reported by the January 2010 VA examiner, i.e., nightmares four times per week, and a global assessment of functioning score of 46. Based on its review of all the evidence, including the treatment records, examinations, and the Veteran's written statements and hearing testimony, the Board finds that, throughout the appeal period, i.e., since July 16, 2007, the appellant's symptoms most closely approximate the criteria for a 50 percent rating. 

The staged rating of 10 percent prior to January 2010 and 50 percent thereafter might be reasonable if the three examination reports were the only information available. But after taking the treatment notes into account, it is clear that throughout this period the Veteran has regularly experienced symptoms consistent with those recorded by the January 2010 examiner (e.g. nightmares four times per week), and relatively mild symptoms, such as those recorded by the August 2007 examiner (e.g. nightmares about two times per month).

The symptoms recorded by the January 2010 examiner are best understood as an intermittent outbreak of severe symptoms rather than a permanent increase in the Veteran's level of disability. This is clear from a review of the reports of the frequency of the Veteran's combat-related nightmares in the period after January 2010. Nightmares were back to "once or twice a month" in October 2011. In November 2012, he reported that combat-related dreams took place only two or three times per month. In his March 2011 hearing testimony, the Veteran said that his nightmares occurred "a couple times, three times a month depending on the time of year." 

At the same time, the 10 percent rating assigned for the period prior to January 2010 under evaluates the severity of the Veteran's symptoms because it does not account for the regular intervals in which his symptoms become more significant at certain times during the year. It is clear that these periods of relatively significant symptoms are not limited to the period surrounding the anniversary of the Veteran's being wounded in a mortar attack in February 1968 during Tet. His treatment records also suggest regularly recurring periods of heightened symptoms in June, in September and around Veteran's day. The Board has considered the frequency and duration of the Veteran's symptoms during these periods of increased disability. According to the January 2010 examination report, the Veteran's symptoms occur daily and last for most of the day. This degree of impairment is not contemplated by the 10 percent rating assigned for the period prior to January 2010.

The evidence, however, shows that the Veteran's symptoms have never more closely approximated the criteria for a rating higher than 50 percent, i.e., they have never approached occupational and social impairment with deficiencies in most areas. There is no evidence of suicidal ideation at any point during the appeal period. None of the examinations or treatment notes indicate such symptoms as, or equivalent to, illogical, obscure or irrelevant speech, impaired impulse control or an inability to function independently. Moreover, none of the appellant's symptoms has resulted in a degree of occupational and social impairment similar to any of the symptoms mentioned specifically in the rating criteria. Cf. Mauerhan, 16 Vet. App. at 443.

With respect to occupational impairment, there is very little evidence that the Veteran's PTSD symptoms have ever been more than a mild impediment to maintaining full-time employment. The August 2007 examiner wrote that during anniversary periods the Veteran had some difficulty concentrating and completing work tasks. The records of the Veteran's counseling sessions at the Olney Vet Center indicate that the Veteran sometimes felt stress at work. Nevertheless, as the Veteran said to both the January 2010 and December 2013 examiners, his psychiatric symptoms have never seriously interfered with his ability to maintain full-time employment. 

The Veteran's application for a total rating based on unemployability identifies PTSD as the reason for his current state of unemployment. But on this issue addressed in this decision the Veteran's specific and detailed statements to the VA examiners are entitled to greater weight. The Veteran told the December 2013 VA examiner that "he did not return to work after he was laid off and was unable to secure a job due to the recession, age, and income requirements and not because of his struggles with PTSD." The examiner also noted that the Veteran denied any change in occupational functioning since his previous examination.

The Veteran's social impairment due to PTSD is probably more significant than his occupational impairment. The extent of his irritability and intrusive memories, particularly during anniversary periods, is similar in duration, frequency and severity to the specific regulatory criteria for the currently assigned 50 percent rating. But the Board finds that his social impairment does not approach the degree contemplated by the criteria for a higher 70 percent rating. While the Veteran is somewhat isolated socially, he has close and regular contact with his wife and daughter. He may not have many friends, but he reported that the friends that he has are close to him and they regularly meet him for activities the Veteran enjoys, such as fishing and golfing. Outside of anniversary periods, the Veteran's social functioning is only moderately diminished by PTSD. In August 2013 he reported that his mood was stable and he was enjoyed golf lessons. In March 2013, "he [was] less depressed and feeling more outgoing." 

Finally, with respect to whether this case should be referred for consideration of an extrascheduler rating such consideration requires a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating adequately contemplates the Veteran's disability picture. See Thun, 22 Vet. App. at 115. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is adequate, and no referral is required. If the schedular evaluation does not contemplate the claimant's level of disability and symptomatology, then the second inquiry is whether the claimant's exceptional disability picture exhibits other related factors such as those described by the regulation as governing norms. If the Veteran's disability picture meets the second inquiry, then the third step is to refer the case to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether an extraschedular rating is warranted. 
 
In this case, the scheduler ratings adequately contemplate the Veteran's disability picture. The Veteran's frequent intrusive memories and nightmares during anniversary periods are similar in degree to the symptoms specifically contemplated in the criteria for a 50 percent disability rating, for example, panic attacks more than once a week, difficulty in establishing and maintaining effective work and social relationships and disturbances of motivation and mood. Moreover, the evidence preponderates against finding that the Veteran's PTSD has caused marked interference with employment, frequent hospitalization, or that his psychiatric symptoms have otherwise rendered impractical the application of the regular schedular standards. According to all of the VA examinations, PTSD has not diminished his ability to work full-time or to independently perform activities of daily living. For these reasons, the Board finds that referral for an extraschedular evaluation is not warranted.


ORDER

Entitlement to an initial evaluation of 50 percent, but no higher, for post-traumatic stress disorder during the period from July 16, 2007 to January 6, 2010 is granted subject to the laws and regulations governing the award of monetary benefits.

Entitlement to an initial evaluation for post-traumatic stress disorder in excess of 50 percent at any time prior to January 7, 2010 or since is denied.


REMAND

The Veteran contends that he is entitlement to a total disability evaluation based on individual unemployability due to service connected disorders. In this regard the appellant is service connected for posttraumatic stress disorder, evaluated as 50 percent disabling; bilateral hearing loss, evaluated as 40 percent disabling; residuals of a left calf, Muscle Group XI shrapnel wound, evaluated as 30 percent disabling; residuals of a left calf, Muscle Group XII shrapnel wound, evaluated as 20 percent disabling; and for tinnitus, evaluated as 10 percent disabling. The Veteran's combined rating for all service-connected disabilities is 90 percent.

The Veteran's combined rating shows that he meets the basic requirement for unemployability benefits under 38 C.F.R. § 4.16 (2014). But the record does not include any current evidence which addresses whether the impact of the Veteran's several disabilities, individually or in combination, precludes all forms of substantially gainful employment. For this reason, the Board will remand the claim for a total disability evaluation based on individual unemployability due to service connected disorders, so that the Veteran may have the opportunity to participate in a social and industrial survey to address his claimed inability to work due to the combined impact of all service connected disorders.

Accordingly, the case is REMANDED for the following action:

1. Obtain all outstanding, pertinent VA and private treatment records since December 2013. All records received should be associated with the claims file. If the AOJ cannot locate all relevant Federal records, it must specifically document the attempts that were made to locate them, and explain in writing why further attempts to locate or obtain any government records would be futile. The AOJ must then: (a) notify the claimant of the specific records that it is unable to obtain; (b) explain the efforts VA has made to obtain that evidence; and (c) describe any further action it will take with respect to the claim. The claimant must then be given an opportunity to respond.

2. The Veteran should then be afforded a VA social and industrial survey in order to accurately determine the impact of his service-connected disabilities alone on his ability to obtain and retain substantially gainful employment. The Veteran is hereby notified that it is his responsibility to report for the examination, and to cooperate in the development of his claim. The Veteran is further advised that the consequences for failure to report for a VA examination without good cause may include denial of his claim. 38 C.F.R. §§ 3.158, 3.655 (2014). In the event that the Veteran does not report for the aforementioned survey, documentation should be obtained which shows notice scheduling that survey was sent to his last known address. It should also be indicated whether any notice sent was returned as undeliverable.

Following completion of the social and industrial survey, the examiner is to provide a detailed review of the Veteran's pertinent medical history and current complaints, as well as the severity of each service-connected disability, and the impact of those abilities on his employability. In particular, the examiner must opine whether the Veteran's service-connected disabilities, taken cumulatively, and in conjunction with his education and occupational experience, are sufficient to preclude his obtaining and retaining any form of substantially gainful (including sedentary) employment. If new physical examinations are needed to address this question those examinations must be performed.

A complete rationale must be provided for any opinion offered, and all information and opinions, once obtained, must be made a part of the Veteran's claims folder, Virtual VA file, or VBMS file. The claims folder, to include Virtual VA and VBMS files, must be made available to and reviewed by the examining social worker prior to completion of the examination. The examining social worker must specify in his/her report that the claims file, Virtual VA records, and VBMS file have been reviewed.
 
3. The AOJ should then review the social and industrial survey to insure that it is in complete compliance with the directives of this REMAND and that the examiner has documented their consideration of all records contained in Virtual VA. If the report is deficient in any manner, the AOJ must implement corrective procedures.
 
4. The AOJ should then readjudicate the Veteran's claim of entitlement to a total disability rating based on unemployability. If any benefit sought remains denied, the case must then be returned to the Board for further appellate consideration, if in order. By this remand, the Board intimates no opinion as to any final outcome warranted.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).


______________________________________________
DEREK R. BROWN
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs