**Mary K. RICHARD, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–889.

United States Court of Veterans Appeals.

Argued July 22, 1996.

Decided Aug. 1, 1996.

Doris Besikof, Denver, CO, for appellant.

Michael R. Smalls, Washington, DC, with whom Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and David W. Engel, Deputy Assistant General Counsel, were on the brief, for appellee.

Before KRAMER, FARLEY, and IVERS, Judges.

FARLEY, Judge:

This is an appeal from a June 10, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which denied an increased rating for the appellant's service-connected post-traumatic stress disorder (PTSD) condition, currently rated as 70% disabling, but granted a total rating based upon the appellant's individual unemployability (TDIU) resulting from service-connected disabilities. This appeal is timely and the Court has jurisdiction under 38 U.S.C. § 7252(a). For the reasons that follow, the Court will vacate the BVA decision and remand the matter for further adjudication.

**I.**

The appellant served in the U.S. Coast Guard from May 1974 to August 1981, and was apparently one of the first women in that

organization. Record (R.) at 144. In February 1990, she was service connected for PTSD, rated as 30% disabling with an effective date of November 1987. R. at 561–63. The appellant filed a Notice of Disagreement (NOD) with the Denver regional office (RO), objecting to the 30% rating. R. at 567. The RO assigned a 50% rating in September 1990. R. at 624–25. In October 1990, the appellant filed an NOD with the 50% rating and also stated: "[W]e would note that the [staff of a local medical facility] believes that the veteran's employability is not appropriate until full vocational rehabilitation has been rendered. On that basis, we believe that a total evaluation is not outside the realm of probability." R. at 638–39.

The RO assigned a 70% rating in January 1992. R. at 828–30. The appellant continued her NOD. R. at 743. A BVA hearing was held in August 1992 (R. at 767–820), and in November 1992, the BVA remanded the issue of an increased rating for further development, including examination by a female VA psychiatrist. R. at 822.

A VA psychiatric examination was conducted in July 1993, and the doctor diagnosed chronic PTSD and assigned a Global Assessment of Functioning (GAF) rating of 50. R. at 1124. GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994). A GAF of 50 is defined as "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Ibid.*

April 1993 records from Barbara Franco, a "Certified Trauma Counselor," were submitted, in which she stated:

At this time [the appellant's PTSD] continues to cause severe symptoms such as depression, anxiety, dissociative episodes, and feeling as if the traumatic events are recurring in the present. As Ms. Richard discusses these difficulties, her affect ranges from flat to excessively anxious and tearful....

... Ms. Richard experiences her PTSD symptoms as so overwhelming that she cannot focus her attention or energy on other issues or needs. Additionally, she continues to have difficulty identifying situations and interpersonal dynamics which set off unconscious trauma-based responses; and tends to assess such "triggering" events and her reactions to them as being attributable to the present time only.

R. at 1126. Her recommendation was that the appellant "consider her emotional difficulties as prohibiting her from seeking gainful employment at the current time. In my opinion, her PTSD symptoms are almost completely unmanageable for her at this point." R. at 1127.

In October 1993, the RO denied a rating higher than 70%, and also denied TDIU. R. at 1130–31, 1133. The RO, however, did grant a compensable rating of 10% for a low back condition, effective April 1987. R. at 1131–32. An NOD with the denial of TDIU was received (R. at 1140–41), and the RO issued a Supplemental Statement of the Case (R. at 1143–51). TDIU was denied again in connection with a claim for service connection for the effects of a tubal ligation operation. R. at 1162–65.

Another BVA hearing was held in April 1994, and Dr. Calvin Neptune (Ph.D. in social work), who had treated the appellant since May 1993, testified (without the presence of the appellant):

I don't believe [the appellant] is capable of maintaining any kind of a job, short of some sub-basement, in a cubical by herself, but she can't sit for very long and do things like that.... When under any stress she shows a wide range of PTSD symptoms. She's distracted easily, she can't concentrate, she becomes confused....

Virtually, all of her social relationships usually and quickly disintegrate. There are a few intimate ones that she maintains for some length of time....

Because what would happen is, and this would happen in the world of work, ... any disagreement, intellectual, opinion, quickly becomes framed in her need to get

some control in her life and have a sense of worth, becomes a value issue. . . .

. . . .

I [have] worked with a number of people with PTSD, [and of all] the people I [have] worked with, [the appellant] is the first one that I can look you in the eye and say, she's totally disabled. She can't work. She has a great false front, it's about one-half of a millimeter thick. The least bit of adversarial quality to it and you will see someone disintegrate.

R. at 1188–90.

In June 1994, the BVA issued the decision currently on appeal. Regarding the denial of the appellant's claim for a 100% schedular rating for PTSD, the Board stated:

The veteran's representative has focused with particularity on the veteran's inability to obtain or maintain employment to support the argument that a 100 percent schedular rating [should be assigned]. We note, however, that the issue of entitlement to a 100 percent schedular rating does involve questions concerning the veteran's industrial impairment. The review, however, does not end there. Both her social and interpersonal impairment, as well as her overall clinical psychiatric orientation must also be analyzed in order to provide a comprehensive determination pursuant to the applicable diagnostic code.

R. at 18–19. The Board concluded that "the veteran's disabilities currently render her incapable of pursuing any gainful employment." R. at 22; *see also* R. at 14 ("Her service-connected disabilities are of such severity as to preclude her from obtaining substantially gainful employment.").

## II.

Under 38 C.F.R. § 4.132, Diagnostic Code (DC) 9411 (1995), an appellant is entitled to a 100% rating for PTSD if her symptomatology meets the following description:

The attitudes of all contacts except the most intimate are so adversely affected as to result in virtual isolation in the community. Totally incapacitating psychoneurotic[ ] symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with al-

most all daily activities such as fantasy, confusion, panic and explosions of aggressive energy resulting in profound retreat from mature behavior. Demonstrably unable to obtain or retain employment.

In *Johnson v. Brown*, 7 Vet.App. 95, 97 (1994), in response to a Court order, the Secretary stated that the criteria in DC 9411 for a 100% rating "are each independent bases for granting a 100% rating." The Court upheld this interpretation of the regulation. *Id.* at 99.

■ The appellant argues that the BVA decision should be reversed and that the matter should be remanded so that a 100% schedular rating for PTSD can be assigned, following *Johnson*, since the BVA expressly found that the appellant was unemployable and she thus met one of the three criteria for a 100% rating under DC 9411. Appellant's Brief (Br.) at 17–21. She also argues that she is entitled to an effective date of "November 9, 1987, the effective date of her first award of service connection for PTSD." Appellant's Br. at 23–24. In his brief and at oral argument, counsel for the Secretary argued that the BVA decision should be vacated and the matter remanded following *Johnson* because the BVA decision does not make clear whether its finding that the appellant was unemployable was based solely on the appellant's PTSD condition or on that condition *in combination with* her back condition. Secretary's Br. at 8–10. The Secretary also argues that the Court should strike pages 1203 through 1227 of the record on appeal as they postdate the BVA decision, and that the issue of entitlement to an earlier effective date should be dismissed for lack of jurisdiction. R. at 11–15.

The Court agrees with the Secretary that remand, as opposed to reversal, is the appropriate remedy here. While the BVA's discussion of the appellant's employability certainly focused on her PTSD condition, the BVA expressly stated that "the veteran's *disabilities* currently render her incapable of pursuing any gainful employment." R. at 22 (emphasis added); *see also* R. at 14 ("Her service-connected disabilities are of such severity as to preclude her from obtaining sub-

stantially gainful employment."). Therefore, it is unclear whether, if the appellant was not service connected at 10% for a back condition, the BVA still would have found her to be unemployable. Accordingly, on remand, the BVA shall decide whether the appellant's PTSD condition alone is sufficient to render her unemployable, and if so, shall award her 100% service connection under DC 9411. *See Johnson, supra.*

 The effective date issue is not ripe for review by the Court. The BVA has not rendered a final decision addressing the proper effective date for the appellant's total rating. *See* 38 U.S.C. §§ 7252(a), 7266(a); *Horowitz v. Brown,* 5 Vet.App. 217, 225 (1993) ("A claimant seeking to appeal an issue to the Court must first obtain a *final* BVA decision *on that issue.*") (second emphasis added). Also, the Court strikes from the record on appeal pages 1203 through 1227 since they postdate the BVA decision, and neither these pages nor any reference to or argument based on them or other material dated after the BVA decision was considered in conjunction with this decision. *See* 38 U.S.C. § 7252(b) ("Review in the Court shall be on the record of proceedings before the Secretary and the Board.").

Finally, counsel for the appellant noted during oral argument that her client's claim has been pending for a considerable length of time and that closure was necessary to end the consequent stress. The Court understands the appellant's concerns. Indeed, even the BVA stated that "the complicated nature of [the appellant's] disability has resulted in significant misunderstanding and confusion." R. at 22. In section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note), Congress provided that the Secretary "shall take such actions as may be necessary to provide for the expeditious treatment, by the [BVA] and by the [ROs] ..., of any claim that has been remanded by the ... United States Court of Veterans Appeals for additional development or other appropriate action." The Court is confident that the BVA and, if necessary, the RO will fulfill this statutory obligation by giving the remaining issues the requisite "expeditious treatment."

### III.

Accordingly, the June 10, 1994, BVA decision is VACATED and the matter is REMANDED for proceedings consistent with this opinion.