Citation Nr: 1527844 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 00-02 049 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Columbia, South Carolina


THE ISSUE

Entitlement to a total disability rating based on unemployability due to service-connected disability (TDIU) from June 17, 1999 through January 4, 2007. 


REPRESENTATION

Appellant (the Veteran) is represented by: Disabled American Veterans 


ATTORNEY FOR THE BOARD

L. Cramp, Counsel


INTRODUCTION

The Veteran had active duty service from March 1966 to March 1968, and from March 1972 to February 1986. 
This appeal comes before the Board of Veterans' Appeals (Board) from an August 2013 Order of the United States Court of Appeals for Veterans' Claims (Veterans Court). The appeal originated from a July 1998 rating decision of the RO in Columbia, South Carolina.

In a decision dated in January 2012, the Board granted a 100 percent rating for posttraumatic stress disorder (PTSD) for the period from January 5, 2007 through April 24, 2007, but denied a 100 percent rating for PTSD during the period from June 17, 1999 through January 4, 2007. The Veteran appealed that decision to the Veterans Court. In a memorandum decision dated in August 2013, the Veterans Court vacated the Board's August 2013 decision, but only to the extent the Board did not address the question of TDIU entitlement from June 17, 1999 through January 4, 2007, and remanded the issue back to the Board to address that issue.

In February 2014, the Board remanded this appeal to the RO for additional evidentiary development. The appeal has since been returned to the Board for further appellate action. 

The Board has reviewed the physical claims file and the electronic file on the Virtual VA and VBMS systems to ensure a total review of the evidence. 


FINDING OF FACT

From June 17, 1999 through January 4, 2007, the Veteran's service-connected disabilities did not render him unable to secure or follow a substantially gainful occupation.


CONCLUSION OF LAW

From June 17, 1999 through January 4, 2007, the criteria for TDIU were not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 3.340, 3.341, 4.16 (2014).

REASONS AND BASES FOR FINDING AND CONCLUSION

Total disability is considered to exist when there is any impairment in mind or body that is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340(a)(1). 

A total disability rating for compensation purposes may be assigned on the basis of individual unemployability, that is, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. § 4.16(a). If there is only one service-connected disability, it must be rated at 60 percent or more; if there are two or more service-connected disabilities, at least one disability must be rated at 40 percent or more, and sufficient additional disability must bring the combined rating to 70 percent or more. Individual unemployability must be determined without regard to any non-service connected disabilities or the veteran's advancing age. 38 C.F.R. §§ 3.341(a), 4.19 (2014); Van Hoose v. Brown, 4 Vet. App. 361 (1993).

Here, during the period under consideration, the Veteran was in receipt of a 90 percent combined disability rating due to the following service-connected disabilities: PTSD (70 percent), diabetes mellitus (40 percent), and gout (20 percent), as well as hypertension, peripheral neuropathy of the right lower extremity, and peripheral neuropathy of the left lower extremity (each 10 percent). Noncompensable service-connected disabilities included hemorrhoids with anal fissure, hemolytic anemia, and periodontal disease. 

Thus, from June 17, 1999 through January 4, 2007, the percentage requirements for consideration of TDIU were met. The question before the Board is whether the Veteran was unable to secure or follow a substantially gainful occupation due to his service-connected disabilities from June 17, 1999 through January 4, 2007. 

After a review of all of the evidence, the Board finds that, during the period under consideration here, the Veteran's service-connected disabilities did not render him unable to obtain or maintain substantially gainful employment. 

Of great significance to the Board's finding, prior to January 4, 2007, the Veteran was employed on a full-time basis (40 hour per week) at the same job he had been performing for the prior 15 years. He left that job on June 29, 2007. At no time during the appeal period was the Veteran actually unemployed. 

The Board observes that much of the caselaw governing TDIU claims deals with claims which are prospective in nature, and which require VA to determine whether current and future substantially gainful employment is reasonably within the abilities of a claimant. This is to some degree a theoretical question, as certain aspects of the equation are unknown, in particular, whether the job market is such that the Veteran's skills and experience are marketable. Here, the entire period on appeal is in the past. The Veteran is seeking retrospective benefits for a period of time during which he was actually employed on a full-time basis. There is no theoretical question to be resolved. In Faust v. West, 13 Vet. App. 342 (2000), the Veterans Court held that where the claimant was actually employed at a substantially gainful occupation, such employment constituted, as a matter of law, "actual employability" for the purposes of 38 C.F.R. § 3.343(c)(1). 

The term "substantially gainful occupation" is not specifically defined for purposes of the regulations governing TDIU. However, marginal employment is not considered substantially gainful employment. This was the focus of the Veteran's argument on appeal to the Veterans Court. Marginal employment includes situations in which an individual's annual income does not exceed the poverty threshold for one person. Employment may be marginal even when the individual's earned income exceeds the poverty threshold if such individual is employed in a protected environment such as a family business or sheltered workshop. 38 C.F.R. § 4.16(a). 

There is no assertion on the Veteran's part that his income was below the poverty threshold during the period under consideration. He reported to the RO that he earned $38,000.00 in 2006. 

The poverty threshold for one person was $10,294 in 2006, and $10,590 in 2007. See http:// www.census.gov/hhes/www/poverty/data/threshld/thresh06.html and http:// www.census.gov/hhes/www/poverty/data/threshld/thresh07.html (both last visited June 22, 2015). 

The Veteran contends that his employment was in a "protected environment." In support of this assertion he noted that he took a demotion in 1992 because he was unable to cope with the stress of his previous supervisory position, and because of the demotion, he was allowed to work "alone in a back office" where he could avoid people. He noted that his manager recommended that an 8-foot partition be built around his area so that he would not see people walk past. He also noted that he modified his work schedule to avoid contact with people, that a psychiatric nurse practitioner recommended that he take an extended leave of absence because he was unable to sustain his then-current state of psychological stressors, and that, because of the stress caused by work, he took all his annual and sick leave to avoid work, and after he was no longer allowed to work a modified schedule, he took disability retirement. 

The Board has reviewed the clinical evidence pertinent to the period on appeal, with particular focus on the mental health evaluations, as the Veteran has not identified any issues with his other service-connected disabilities in terms of contributing to a "sheltered workshop" environment. The report of a VA examination in June 1999 reveals that, after leaving military service, the Veteran was employed by the VA RO in Montgomery, Alabama. From 1986 until 1992, he worked as a personnel supervisor. However, in 1992, he took a downgraded position as a correspondence clerk because he could not take the stress of the supervisory position. In the new position, he was able to work alone in a back office. He liked this situation as it limited his contact with people. The examiner noted that the Veteran appeared unable to relate to others in a work setting and had difficulties tolerating the stressors and pressures associated with day-to-day work activities; however, he was able to sustain the attention needed to do repetitive tasks. While the examiner found some impairment in attention, concentration, and memory, the Veteran's intellectual functioning was estimated to be in the high-average range. The examiner assigned a GAF score of 51. 

The Global Assessment of Functioning (GAF) score is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th ed. (DSM-IV) at 32). A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning, (e.g., few friends, conflicts with peers or co-workers).

The report of a VA examination in July 2000 reveals that the Veteran was still working at the Montgomery RO in the role of correspondence clerk. The Veteran reported a significant difficulty getting along with his coworkers. He was able to work, and was doing well, as long as he was left entirely by himself. He noted that he got along okay with his former supervisor, but had recently been assigned a new supervisor. He reported he had not had any confrontations with the new supervisor and was not certain about how they would get along. He was noted to be easily irritated by interactions with other people. He reported he had wanted to get into physical fights with coworkers, but this had not happened. He had expressed thoughts of harming and killing his coworkers. He expressed uncertainty about his ability to control these thoughts. The examiner noted that, it is very difficult to predict the occurrence of violence; nevertheless, there are several factors which suggest that the Veteran may not act out on his violent threats. These include the fact that he was well aware of the consequences of his actions, he was extremely proud of his children and was aware of the consequences for them, he did not have access to a gun at work, and he had not acted out violently at work in the past. Nevertheless, the Veteran was found to have significant difficulties controlling his anger and therefore it was not possible to say with certainty that he would never act on these impulses. The Veteran's social and vocational functioning was assessed as mildly to moderately impaired and his symptoms were of moderate intensity. The GAF score was 53. 

During the period in question, the Veteran's GAF scores have been very consistent. Scores of 55 were assigned in November 2003 and December 2004. Scores of 50 were assigned in January 2001, November 2002, April 2005, July 2005, November 2005, April 2006, October 2006, November 2006, and January 2007. A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

While the term sheltered workshop is not defined in the regulations applicable to TDIU, the Board observes that the Wage and Hour Division of the United States Department of Labor uses the terms sheltered workshop and work center interchangeably to mean a place that has 'historically provided rehabilitation services, day treatment, training, and/or employment opportunities to individuals with disabilities.' Sheltered Workshop, Department of Labor, Wage & Hour Division, Field Operations Handbook, available at http://www.dol.gov/whd/
FOH/ch64/64k00.htm (last accessed 6/22/2015). Thus, the definition entails an environment that is not a competitive employment environment, but one whose purpose is, at least in part, to train, rehabilitate, or treat persons with disabilities. 

While the VA RO in this case clearly made accommodations regarding the conditions of the Veteran's employment, making accommodations is not the equivalent or near equivalent of a sheltered workshop as defined by the Department of Labor. The Veteran has offered not specifically asserted that his employment as a VA correspondence clerk was part of a program of rehabilitation services, day treatment, or training, or that his position was specifically offered as part of a program of employment opportunities to individuals with disabilities. The Veteran provided no additional evidence in response to a written request for evidence demonstrating that his employment at the RO met the definition of marginal employment. 

The acknowledged fact that the Veteran's employer made reasonable accommodations in his work schedule, work environment, and work duties, in an effort to retain him, is not itself extraordinary. Rather, this is a requirement of all employers under the Americans with Disabilities Act (as amended, 42 U.S.C. § 12101 et seq.) which generally provides that employers must provide reasonable adjustments or accommodations to a job or work environment that makes it possible for an individual with a disability to perform job duties when such accommodations would not impose undue hardship. 

Accommodations regarding the location of the Veteran's work environment, changes in his work schedule, and the requirement of taking sick leave and annual leave, which the Veteran had accrued, are also not extraordinary and do not render the Veteran's employment the equivalent of a sheltered workshop. Indeed, the fact that the Veteran took disability retirement when his accrued leave had been exhausted highlights the fact that the accommodations made by his employer were not unlimited, and were not specifically part of a program of rehabilitation services, training, or a program of employment opportunities to individuals with disabilities. 

The Board also notes that, the fact that the Veteran accepted a lower-paid position, without supervisory duties, in an attempt to accommodate his PTSD symptoms, does not suggest that his employment was the equivalent of a sheltered workshop. Rather, it is an obvious acknowledgment that the Veteran's PTSD symptoms caused occupational impairment. This is true of all disability levels. It does not imply or suggest that the Veteran's retention under such circumstances rendered his employment the equivalent of a sheltered workshop. 

In sum, the Board finds that the evidence has not attained equipoise on the question of whether the Veteran's employment was in a protected environment such as a family business or sheltered workshop during the period from June 17, 1999 through January 4, 2007. The Veteran's employment was not marginal, but was substantially gainful. The Board finds that the allegations of unemployability provided by the Veteran are neither persuasive nor supportable when viewed in light of the evidence of record. See 38 C.F.R. § 3.159(a). The benefit of the doubt rule is not for application. 38 U.S.C.A. § 5107(b). TDIU from June 17, 1999 through January 4, 2007 is not warranted.

The Veteran does not assert that there has been any deficiency in the notice provided to him in January 2015 under the Veterans Claims Assistance Act of 2000 (VCAA) and he has not identified any prejudice resulting from any deficiency. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (no presumption of prejudice on a notice deficiency; the burden of showing that an error is harmful or prejudicial falls upon the party attacking the agency's determination). 

The RO has obtained pertinent medical records including the service treatment records, VA outpatient treatment reports, and records from the Social Security Administration (SSA). The RO has also obtained a thorough medical examination regarding the claim. The Veteran has made no specific allegations as to the inadequacy of any report or opinion. Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of his opinion). 

The Board finds that there is no need for any additional medical opinion regarding this case. It is undisputed that the Veteran was actually employed during the entire period on appeal. The question for resolution was whether his employer's accommodations met the requirement of marginal employment. This is not a question medical in nature, and the Board finds that a medical opinion is not necessary. 

As noted above, this appeal involves a remand by the Board for additional evidentiary development. A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998). While substantial compliance is required, strict compliance is not. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) citing Dyment v. West, 13 Vet. App. 141, 146-47 (1999). 

In this case, the RO substantially complied with the Board's February 2014 remand instructions by providing an appropriate notice letter, by asking the Veteran to submit any argument or evidence that his employment during the time period in question was in a sheltered or protected work environment, or otherwise was reflective of only marginal employment, including relevant employment or human resources department records, obtaining all records from the Social Security Administration, and adjudicating the issue in the first instance. 

The Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist.


ORDER

From June 17, 1999 through January 4, 2007, TDIU is denied.




____________________________________________
JONATHAN B. KRAMER 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs