Citation Nr: 1602938 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 10-24 121 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

Entitlement to an initial rating (or evaluation) for posttraumatic stress disorder (PTSD) in excess of 50 percent from July 10, 2003 through March 17, 2011, and in excess of 70 percent from March 18, 2011 through June 2, 2015.


REPRESENTATION

Appellant represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

L.M. Yasui, Counsel



INTRODUCTION

The Veteran, who is the appellant in this case, served on active duty from June 1966 to May 1978.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2003 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in New Orleans, Louisiana, which granted service connection for PTSD and assigned a 30 percent initial disability rating, effective July 10, 2003. Jurisdiction over this claim is currently with the RO in Houston, Texas. 

This appeal was processed using both the Virtual VA paperless claims processing system and the Veterans Benefits Management System (VBMS). Accordingly, any future review of this case should take into consideration the existence of this electronic record.

Although the Veteran requested a Board hearing in the May 2010 Substantive Appeal, VA Form 9, he subsequently withdrew the hearing request in December 2014. As such, the appeal will proceed as the hearing request is considered to have been withdrawn. 38 C.F.R. § 20.702(e) (2015).

In February 2015 and September 2015, the Board remanded this matter to the Agency of Original Jurisdiction (AOJ) for additional development. The matter has been properly returned to the Board for appellate consideration. See Stegall v. West, 11 Vet. App. 268 (1998). An additional discussion of the AOJ's compliance with the Board Remands is included in the Duties to Notify and Assist section below.

An October 2015 rating decision granted a 50 percent rating for PTSD (an increase from 30 percent) from January 7, 2008 through March 17, 2011, and 100 percent from June 3, 2015. The 50 percent rating from July 10, 2003 through January 6, 2008 (granted in a June 2010 rating decision), and the 70 percent rating from March 18, 2011 through June 2, 2015 (granted in a May 2014 rating decision) remained. As such, the appeal of the initial disability rating for the service-connected PTSD will not include the period from June 3, 2015, forward, because the Veteran is already in receipt of a 100 percent rating for that period. See AB v. Brown, 6 Vet. App. 35 (1993) (a veteran will generally be presumed to be seeking the highest rating available, and it follows that a partial grant of a higher rating does not terminate an appeal).


FINDINGS OF FACT

1. For the initial rating period from July 10, 2003 through March 17, 2011, the Veteran's PTSD has more nearly approximated occupational and social impairment with deficiencies in most areas such as work, family relations, and mood manifested by severe symptoms of sleep difficulty, problems with concentration and attention, depressed mood that affects the ability to function effectively, anxiety, suspiciousness and hypervigilance, mild memory loss such as forgetting names directions or recent events, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, and difficulty adapting to stressful circumstances including work or a work-like setting.

2. For the entire initial rating period from July 10, 2003 through June 2, 2015, the Veteran's PTSD has not more nearly approximated total occupational and social impairment.


CONCLUSIONS OF LAW

1. For the initial rating period from July 10, 2003 through March 17, 2011, resolving reasonable doubt in the Veteran's favor, the criteria for an initial rating of 70 percent for PTSD have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.7, 4.130, Diagnostic Code 9411 (2015). 

2. For the entire initial rating period from July 10, 2003 through June 2, 2015, the criteria for an initial disability rating in excess of 70 percent for PTSD have not been met or more nearly approximated. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.7, 4.130, Diagnostic Code 9411 (2015). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). VCAA notice should be provided to a claimant before the initial unfavorable agency of original jurisdiction decision on a claim. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Concerning the appeal for higher initial ratings for PTSD, because it is an appeal that arises from the Veteran's disagreement with the initial rating following the grant of service connection for PTSD, no additional notice is required. Under these circumstances, since the claim for service connection was granted, there are no further notice requirements under the law with regard to this issue. The United States Court of Appeals for the Federal Circuit (Federal Circuit) and the United States Court of Appeals for Veterans Claims (Court) have held that, once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App.112 (2007); 38 C.F.R. § 3.159(b)(3)(i) (no duty to provide VCAA notice upon receipt of a notice of disagreement); VAOPGCPREC 8-2003 (in which the VA General Counsel interpreted that separate notification is not required for "downstream" issues following a service connection grant, such as initial rating and effective date claims).

With regard to the duty to assist, VA has obtained the Veteran's service treatment records, VA treatment records, VA examinations, and the Veteran's statements. In this regard, VA provided the Veteran with VA PTSD examinations in September 2003, August 2005, and June 2015 with an October 2015 VA addendum medical opinion (pursuant to the February 2015 and September 2015 Board Remands) to assist in determining the etiology and severity of the PTSD. Stegall, 11 Vet. App. at 268. The Veteran was also afforded a VA neuropsychiatric examination in March 2011. As the VA examination reports were written after an interview with the Veteran and contain specific findings regarding the extent of the Veteran's PTSD at the time of the examinations, the VA examinations are adequate for VA purposes, and there is no duty to provide an additional examination or medical opinion regarding the appeal for higher initial ratings for PTSD. 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159(c)(4). 

As such, VA has provided assistance to the Veteran as required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c), as indicated under the facts and circumstances in this case. The Veteran has not made the RO or the Board aware of any additional evidence that needs to be obtained in order to fairly decide this appeal. Mayfield, 444 F.3d at 1328. Hence, no further notice or assistance is required to fulfill VA's duties to notify and assist the Veteran in the development of the appeal adjudicated herein.

Disability Rating Criteria

Disability evaluations (ratings) are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10 (2015).

In evaluating a disability, the Board considers the current examination reports in light of the whole recorded history to ensure that the current rating accurately reflects the severity of the condition. The Board has a duty to acknowledge and consider all regulations that are potentially applicable. Schafrath v. Derwinski,
1 Vet. App. 589 (1991). The medical as well as industrial history is to be considered, and a full description of the effects of the disability upon ordinary activity is also required. 38 C.F.R. §§ 4.1, 4.2, 4.10.

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. Reasonable doubt regarding the degree of disability will be resolved in the veteran's favor. 38 C.F.R. § 4.3. 

When a claimant is awarded service connection and assigned an initial disability rating, separate disability ratings may be assigned for separate periods of time in accordance with the facts found. Such separate disability ratings are known as staged ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999) (noting that staged ratings are assigned at the time an initial disability rating is assigned). Here, the Board will evaluate the issue as an appeal for higher evaluations of the original award. In such cases, the severity of the disability at issue is to be considered during the entire period from the initial assignment of the disability rating to the present time. Id. 

The Board has reviewed all the evidence in the Veteran's electronic file (to include on Virtual VA and VBMS), with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that VA must review the entire record, but does not have to discuss each piece of evidence). Hence, the Board will summarize the relevant evidence where appropriate and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the issue on appeal.


Initial Disability Ratings for PTSD 

PTSD is rated under 38 C.F.R. § 4.130, Diagnostic Code 9411. The General Rating Formula provides that all psychiatric disorders are to be rated together as one disability, and provides only one General Rating Formula for rating service-connected psychiatric disorders. See also 38 C.F.R. § 3.310 (2014) (directing that the secondary condition is to be considered a part of the original condition). 

Pertinent in this case, the General Rating Formula provides that a 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped, speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130.

A 70 percent rating will be assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. Id. The criteria for a 70 percent rating are met if there are deficiencies in most of the areas of work, school, family relations, judgment, thinking, and mood. Bowling v. Principi, 15 Vet. App. 1, 11-14 (2001).

A 100 percent schedular rating contemplates total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130.

The use of the term "such as" in the General Rating Formula for Mental Disorders in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). It is not required to find the presence of all, most, or even some, of the enumerated symptoms recited for particular ratings. Id. The use of the phrase "such symptoms as," followed by a list of examples, provides guidance as to the severity of the symptoms contemplated for each rating, in addition to permitting consideration of other symptoms particular to each veteran and disorder, and the effect of those symptoms on his/her social and work situation. Id. 

In Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (2013), the Federal Circuit held that VA "intended the General Rating Formula to provide a regulatory framework for placing veterans on a disability spectrum based upon their objectively observable symptoms." The Federal Circuit stated that "a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration." It was further noted that "§ 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas."

In assessing the evidence of record, it is important to note that the Global Assessment of Functioning (GAF) score is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing DSM-IV at 32).

A GAF score of 21 - 30 indicates "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."

A GAF score of 31 - 40 indicates "Some impairment in reality testing or communication (e.g. speech is at times illogical, obscure or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). 

A GAF score of 41-50 indicates "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. 

A GAF score of 51-60 indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning, (e.g., few friends, conflicts with peers or co-workers)." Id. 

A GAF score of 61-70 indicates "Mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id. 

The GAF score and interpretations of the score are important considerations in rating a psychiatric disability. See, e.g., Richard, 9 Vet. App. at 267; Carpenter v. Brown, 8 Vet. App. 240, 243 (1995). However, the GAF score assigned in a case, like an examiner's assessment of the severity of a condition, is not dispositive of the rating issue. The GAF score must be considered in light of the actual symptoms of a veteran's disorder, which provide the primary basis for the rating assigned. See 38 C.F.R. § 4.126(a) (2015).

On appeal to the Board, a November 2003 rating decision granted service connection for PTSD and assigned a 30 percent initial disability rating, effective July 10, 2003, the date the claim for service connection was received by VA. Subsequently, in a June 2010 rating decision, the RO staged the disability rating for PTSD to 50 percent, effective from July 10, 2003 through January 6, 2008. In an April 2011 rating decision, the RO granted a disability rating for PTSD of 70 percent, for the period from December 10, 2010. In a May 2014 rating decision, the stage for the 70 percent rating for PTSD was established from March 18, 2011. As noted above, an October 2015 rating decision staged the rating for PTSD to 50 percent from January 7, 2008 through March 17, 2011, and 100 percent from June 3, 2015. By entering a Notice of Disagreement in December 2003 with the initial rating assigned in the November 2003 rating decision (on appeal), the Veteran has at least implicitly contended that the service-connected PTSD has been manifested by more severe symptoms or impairment than that contemplated by the 50 and 70 percent "staged" disability ratings assigned. 

From July 10, 2003 through March 17, 2011

After a review of all the evidence, lay and medical, the Board finds that, for the initial rating period from July 10, 2003 through March 17, 2011, the Veteran's PTSD has manifested occupational and social impairment with deficiencies in most areas such as work, family relations, and mood, and more nearly approximates the criteria for the 70 percent disability rating assigned under Diagnostic Code 9411.

In an August 2003 VA mental health treatment note, the Veteran reported that he is hypervigilant and unable to sleep at night, constantly patrols his home, and wakes at the slightest noise. The Veteran reported that, when he does sleep, he has nightmares of combat and of being chased. He reported that he cannot stand crowds and must always have his back to the wall. The Veteran reported having flashbacks and being startled easily. He stated that he will not allow his wife to have her nails done by oriental people and will not eat oriental food. The Veteran's wife reported that the Veteran is distant and "just shuts down." After a mental health examination, a GAF score of 40 was assigned, indicating major impairment in several areas, such as work or school, family relations, judgment thinking, or mood, which more closely approximates the 70 percent rating criteria for PTSD.

A September 2003 VA mental health treatment note reflects that the Veteran requested an increase in medication for PTSD. At that time, the VA mental health professional noted the August 2003 VA mental health evaluation and indicated that there have been no significant changes since the Veteran was last seen (in August 2003).

Since September 2003, the Veteran has been afforded numerous VA examinations and has received regular mental health treatment from VA. To assist in determining the level of severity of the Veteran's PTSD throughout the initial rating period, the Board remanded the issue in February 2015 to afford the Veteran a VA PTSD examination. Specifically, the February 2015 Board Remand instructed the AOJ to obtain an examination that included opinions as to (a) the Veteran's overall level of social and occupational functioning due to PTSD from July 2003 to January 2008, (b) whether the record demonstrates that the Veteran underwent any improvement in his psychiatric condition in January 2008, and (c) the level of social and occupational functioning due to PTSD from January 2008 to March 2011.

In an October 2015 VA addendum medical opinion (obtained pursuant to the June 2015 VA PTSD examination and the September 2015 Board Remand), the VA examiner opined that, as to the Veteran's overall level of social and occupational functioning due to PTSD from July 2003 to March 2011 and whether the Veteran underwent any worsening in his psychiatric condition from July 2003 to March 2011, there is nothing in the medical records which details or shows changes in the Veteran's level of impairment. The VA examiner referenced an October 8, 2010 VA outpatient visit note, which included the Veteran's VA treating psychiatrist, 
Dr. A.H.'s statement, "In my opinion, [the Veteran] has had some periods of tentative stability but his [symptoms] have always been severe since I have seen him." Here, while the October 2015 VA examiner indicated that the VA outpatient visit note is dated "10/8/2010," the record reflects that the quoted VA treatment report is dated November 8, 2010. Indeed, in the November 2010 VA outpatient visit note, Dr. A.H. indicated that the Veteran's PTSD is chronic with severe symptoms.

Also, in a December 2010 letter, Dr. A.H. assessed that the Veteran's symptoms of PTSD are severe and chronic and prognostically, will be chronic and progressive. Dr. A.H. also indicated that the Veteran's symptoms have disrupted several relationships and have impaired the ability to function on a daily basis. While the Veteran has been compliant with treatment, Dr. A.H. noted that the symptoms have not gotten much better. Consistent with Dr. A.H.'s opinion - that the Veteran's PTSD symptomatology has remained severe since July 2003 despite periods of relative stability - VA treatment records since July 2003 reflect widely fluctuating GAF scores ranging from 40 to 59. Indeed, throughout the appeal period, from July 10, 2003 through March 17, 2011, although the VA examinations (particularly in September 2003 and August 2005) and some VA treatment records demonstrate some temporary periods of improvement in the Veteran's impairment, the evidence, to include the October 2015 VA examiner and Dr. A.H.'s opinions, more closely reflects a consistent (severe) level of impairment due to PTSD.

Overall, the above evidence offers probative evidence of occupational and social impairment with deficiencies in most areas such as work, family relations, and mood for the appeal period from July 10, 2003 through March 17, 2011. For these reasons, and resolving reasonable doubt in favor of the Veteran, the Board finds that these symptoms more nearly approximate the criteria under Diagnostic Code 9411 for the higher 70 percent disability rating for the initial rating appeal period from July 10, 2003 through March 17, 2011. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102, 4.3, 4.7, 4.130.

From July 10, 2003 through June 2, 2015

The criteria for a disability rating of 100 percent have not been met or more nearly approximated for any period on appeal from July 10, 2003 through June 2, 2015. The evidence during the appeal period from July 10, 2003 through June 2, 2015 does not show that the Veteran experienced total occupational and social impairment. The evidence shows no symptoms of gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting self or others, intermittent inability to perform activities of daily living including maintenance of minimal personal hygiene, disorientation to time or place, or memory loss for names of close relatives, own occupation, or own name. 

In short, the Board does not find evidence that the rating assigned for the PTSD should be higher for any other separate period based on the facts found during the appeal period from July 10, 2003 through June 2, 2015. The evidence of record supports the conclusion that the Veteran is not entitled to additional compensation in excess of 70 percent during any time within the period on appeal. See Fenderson, 12 Vet. App. at 126. For these reasons, the Board finds that a preponderance of the evidence is against an initial rating in excess of 70 percent for PTSD for any period from July 10, 2003 through June 2, 2015.

Extraschedular Consideration

The Board has considered whether referral for extraschedular consideration is warranted. An extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1) (2013); see Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether the veteran's disability picture requires the assignment of an extraschedular rating.

The Board finds that all the symptomatology and occupational and social impairment caused by the Veteran's service-connected PTSD are specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required for any period on appeal. The schedular rating criteria, Diagnostic Code 9411, specifically provide for disability ratings based on a combination of history and clinical findings. In this case, considering the lay and medical evidence, for the entire initial period on appeal from July 10, 2003 through June 2, 2015, the Veteran's PTSD has manifested severe symptoms of sleep difficulty, problems with concentration and attention, depressed mood that affects the ability to function effectively, anxiety, suspiciousness and hypervigilance, mild memory loss such as forgetting names directions or recent events, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, and difficulty adapting to stressful circumstances including work or a work-like setting. These symptoms are either explicitly part of the schedular rating criteria or are "like or similar to" those symptoms and impairment explicitly listed in the schedular rating criteria. Mauerhan, 16 Vet. App. at 443. The levels of occupational and social impairment are also explicitly part of the schedular rating criteria. In addition, the GAF scores are incorporated as part of the schedular rating criteria as they tend to show the overall severity of symptomatology or overall degree of impairment in occupational and social functioning.


The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 38 U.S.C.A. § 1155. "Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 38 C.F.R. § 4.1. In this case, the symptoms reported by the Veteran regarding the service-connected PTSD are specifically contemplated by the criteria discussed above, including the effect of the Veteran's symptoms on occupation and daily life. In the absence of exceptional factors associated with PTSD, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). Also, in this regard, the Veteran is already in receipt of a total disability rating based on individual unemployability due to service-connected disabilities (TDIU), which is another form of extraschedular rating with different criteria; as such, a TDIU is not part of the initial rating claims. Rice v. Shinseki, 22 Vet. App. 447 (2009).

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. In this case, while the Veteran is service connected for other disabilities, the Veteran has not asserted, and the evidence of record has not 

suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. 


ORDER

For the initial rating period from July 10, 2003 through March 17, 2011, an initial disability rating of 70 percent for PTSD is granted; for the entire initial rating period from July 10, 2003 through June 2, 2015, an initial disability rating in excess of 70 percent for service-connected PTSD, is denied.



____________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs