Citation Nr: 1755114 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 12-07 412 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to an initial evaluation in excess of 30 percent disabling for post-traumatic stress disorder prior to February 16, 2017, and in excess of 70 percent disabling thereafter.

2. Entitlement to an effective date prior to May 26, 2009, for the grant of service connection for post-traumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Ralph Bratch, Attorney at Law


ATTORNEY FOR THE BOARD

N. Whitaker, Associate Counsel


INTRODUCTION

The Veteran served on active duty with the U.S. Army from August 1965 to May 1967. The Veteran's tenure of service includes service during the Vietnam Era.

This matter comes before the Board of Veterans' Appeals (Board) from an April 2011 Decision Review Officer (DRO) decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio.

The Board notes that the April 2011 DRO decision, granted service connection for PTSD and assigned an evaluation of 30 percent disabling, effective May 26, 2009. In an October 2017 notice of disagreement, the Veteran indicated that he disagreed with the effective date of this grant. A statement of the case has not been issued as it relates to the issue of entitlement to an earlier effective date for PTSD; therefore, the Board is required to remand the issue for issuance of the statement of the case. Manlicon v. West, 12 Vet. App. 238 (1999).

As previously noted, the Veteran's service-connected PTSD was assigned an evaluation of 30 percent disabling in April 2011. In May 2011, the Veteran submitted a notice of disagreement contending that he was entitled to a higher evaluation. In September of the same year, the Veteran's Wife submitted an Affidavit attesting to the severity of the Veteran's symptoms. Thereafter, a statement of the case was issued in March 2012 which continued the previously assigned evaluation. Also in March 2012, The Veteran filed a timely appeal to the Board (VA Form 9). In February 2013, the RO issued a supplementation statement of the case continuing the evaluation of 30 percent disabling. The Veteran's appeal was certified to the Board in same month. In a May 2014 Board decision, the Veteran's increased rating claim was denied. 

In the same month, the Veteran filed a motion to reconsider contending that the February 2011 VA examiner failed to fully analyze the independent medical evidence and consider his wife's lay statement. Thereafter, in a July 2014 Board Remand Decision, the Veteran's claim was remanded to the AOJ with a directive to afford the Veteran a new examination to assess the current severity of his PTSD. Due to the RO's failure to comply with the Board remand directives, the Veteran filed a petition for extraordinary relief to implement the Board's directive in May 2016. 

In February 2017, the Veteran was afforded a new VA examination. Thereafter, in a September 2017 Rating Decision, the Veteran's evaluation for PTSD was increased to 70 percent disabling. A supplemental statement of the case confirming the assignment of a 70 percent evaluation was issued in the same month. 

Because the AOJ did not assign the maximum evaluation allowable under the applicable rating schedule, the appeal for a higher evaluation remains before the Board. AB v. Brown, 6 Vet. App. 35 (1993).

The Board notes that the Veteran was previously represented by Andrew Rutz of the Bosley & Bratch law firm. However, in October 2017, a new VA Form 21-22 appointing Mr. Ralph Bratch of the same law firm was associated with the Veteran's electronic claims file. 

The issue of entitlement to an effective date prior to May 26, 2009, for the grant of service connection for PTSD is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. Prior to February 16, 2017, the Veteran's PTSD was manifested by occupational and social impairment with reduced reliability and productivity due symptomatology such as: flattened affect; impairment of short-term and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. It has not been manifested by symptomatology of as such severity as to result in occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood.

2. From February 16, 2017, the Veteran's PTSD was manifested by occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to symptomatology such as suicidal ideation; depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); difficulty in adapting to stressful circumstances (including work or a work like setting); and an inability to establish and maintain effective relationships. It has not been manifested by symptomatology of such severity as to result in total occupational and social impairment.


CONCLUSIONS OF LAW

1. The criteria for establishing entitlement to an evaluation of 50 percent, but no higher, for PTSD prior to February 16, 2017, have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411 (2017).

2. The criteria for establishing entitlement to an evaluation in excess of 70 percent for PTSD, from February 16, 2017, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to Notify and Assist

The Board has considered the Veteran's claim(s) and decided entitlement based on the evidence. Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record, with respect to his claims. See Doucette v. Shulkin, 28 Vet. App. 366, 369-70 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record). Therefore, the Board will proceed to adjudicate this case.

Disability ratings, generally

Disability ratings are intended to compensate for impairment in earning capacity due to a service-connected disorder. 38 U.S.C.A. § 1155 (West 2014). Separate diagnostic codes identify the various disabilities. 38 C.F.R. § 4.27 (West 2014). It is necessary to rate the disability from the point of view of the Veteran working or seeking work, see 38 C.F.R. §§ 4.1, 4.2, and to resolve any reasonable doubt regarding the extent of the disability in the Veteran's favor. 38 C.F.R. § 4.3 (2017). Evaluations are based on functional impairments which impact a veteran's ability to pursue gainful employment. 38 C.F.R. § 4.10 (2017). If there is a question as to which disability rating to apply to the Veteran's disability, the higher rating will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise the lower rating will be assigned. 38 C.F.R. § 4.7 (2017).

In considering the severity of a disability, it is essential to trace the entire medical history of the Veteran. 38 C.F.R. §§ 4.1 , 4.2, 4.41 (2017). Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2 (2017).

In general, the degree of impairment resulting from a disability is a factual determination and generally the Board's primary focus in such cases is upon the current severity of the disability. Francisco v. Brown, 7 Vet. App. 55, 57-58 (1994). Nonetheless, separate, or staged, ratings can be assigned for separate periods during the initial rating period on appeal based on the facts found. See O'Connell v. Nicholson, 21 Vet. App. 89, 91-92 (2007); Fenderson v. West, 12 Vet. App. 119 (1999).





Increased Rating for Post-traumatic Stress Disorder

The General Rating Formula for Mental Disorders, including Diagnostic Code 9411, at 38 C.F.R. § 4.130 (2017) provides the following ratings for psychiatric disabilities: 

A 30 percent evaluation is provided for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). Id.

A 50 percent rating is warranted if it is productive of occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id. 

A 70 percent rating contemplates occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. Id. 

A 100 percent rating contemplates total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. 

The use of the term "such as" in the general rating formula for mental disorders in 38 C.F.R. § 4.130 demonstrates that the symptoms listed after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). VA is not required to find the presence of all, most, or even some of the enumerated symptoms recited for particular ratings. Id. The use of the phrase "such symptoms as," followed by a list of examples, provides guidance as to the severity of the symptoms contemplated for each rating and permits consideration of other symptoms particular to each veteran and disorder and the effect of those symptoms on the Veteran's social and work situation. Id. Indeed, § 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013).

In this case, the Veteran contends that he is entitled to an initial evaluation in excess of 30 percent disabling for his service-connected PTSD prior to February 16, 2017, and in excess of 70 percent disabling thereafter. 

A. Period prior to February 16, 2017

Review of VA treatment records indicate that the Veteran has been receiving ongoing treatment for his symptoms related to PTSD since March 2009. Current treatment includes individual and group therapy, as well as oral prescription medications including citalopram, mirtazapine, venlafaxine, bupropion and trazodone. As far back as 2007, the Veteran has reported persistent nightmares, lack of motivation, and problems with anger and aggressive behavior. A March 2008 general psychiatric medical assessment note referenced the Veteran's report of thoughts of suicide, with no present plan or intent. His affect was described as sad, with a depressed and irritable mood. In April of the same year, the Veteran reported experiencing panic attacks. A general psychiatric assessment note, dated March 2009, noted ongoing panic attacks and suicidal ideation with flashbacks occurring 2-3 times per week. 

In November 2010, a VA general psychiatric assessment note indicated that the Veteran reported symptoms including sleep disturbance, traumatic/distressing nightmares, intrusive memories, and chronic depression. He also reported a depressed mood and sadness due to the passing of his father. His son's ailing health condition and need for kidney transplant was cited as an additional stressor. Panic attacks were also reported. In order to cope with his familial stress, the Veteran admitted excessive use of alcohol. A GAF (Global Assessment of Functioning Score) of 49 was noted. 

In a mental health treatment note, dated March 2011, the Veteran was described as alert, oriented as to place and time, with normal speech and thought processes. No evidence of delusions, hallucinations, suicidal/homicidal ideation or intent was noted. The Veteran's mood was described as euthymic and his affect was deemed appropriate as to content. Other reported symptoms include intrusive and distressing thoughts of traumatic events, recurrent disturbing dreams, re-experiencing traumatic events, difficulty falling or staying asleep due to flashbacks, detachment/isolation from others, interpersonal conflict, irritability or outbursts of anger, sadness, guilt, and depression. The Veteran reported some improvement in his experience of panic attacks. A GAF score of 50 was referenced.

In February 2011, the Veteran underwent a VA examination to assess the nature and etiology of his psychiatric condition. During the evaluation, the Veteran reported a depressed mood, sleep disturbance, irritability, avoidance, distressing nightmares/re-experiencing, and ongoing concern for his son's health condition. He denied experiencing panic attacks within the previous 6-7 months. No problems with hygiene or self-care were reported. The Veteran reported participation in some household chores, but admitted that he sleeps separately from his wife due to his changing mood. Post service, the Veteran reported self-employment between 1986 and 2010 performing auto refinishing and painting for insurance companies. He discontinued work in 2013 due to a hip condition. While working, the Veteran reported a strong preference for an individual work environment and contends that he had good relationships with his customers. The Veteran admitted to having a small group of close friends.

On examination, the Veteran was observed as alert, appropriately-dressed, and oriented as to time and space. His behavior was cooperative with good eye contact and normal psychomotor activity. The Veteran's mood was described as euthymic with a congruent affect. Thought processes and content were deemed unremarkable, with no signs of delusions or hallucinations. The Veteran denied suicidal or homicidal ideation or intent. On review of the record, the examiner noted the Veteran's treatment history shows ongoing problems with concentration, attention, and memory. However, the examiner stated that the aforementioned symptoms were not apparent on the date of the examination. 

The examiner acknowledged the Veteran's report of avoidance, exaggerated startled response, distressing thoughts, and an inability to recall important aspects of traumatic events. He also denied a lack of interest in activities or social isolation. The examiner did not comment on the apparent conflict between the Veteran's report of symptoms and his denial of related symptoms. Following the clinical interview, the examiner diagnosed the Veteran with PTSD and assigned a GAF score of 55. In reaching the GAF score assignment, the examiner notes VA treatment records indicating a history of GAF scores as low as 49 and as high as 50. On the date of examination, the examiner estimated a GAF score of 60, but nevertheless assigned a score of 55 to reflect consideration of the Veteran's prior scores. In light of the Veteran's preference for "being alone," the examiner concluded that if the Veteran had remained in the workforce, he would work best in an independent work environment. This determination was supported by reference to the Veteran's moderate difficulty with flexibility and dealing with authority. 

In September 2011, the Veteran's Wife submitted an affidavit in which she reported the Veteran's difficult behavior and impaired judgment. She indicated that the Veteran suffers from dramatic mood swings and uncontrolled emotion which required her to relocate from the marital bedroom. His behavior was described as irrational with outbursts in anger. The Veteran's Wife reported feeling cautious, stressed and uncomfortable in the home. She also complained that the Veteran forgot to pay bills, allowed his driver's license to expire, failed to attend to property maintenance, and neglected work-related duties (e.g. he received cars for repair, accepted a fee, but failed to complete the work). His mental health condition was noted as the cause of problems in the Veteran's familial relationships.

In a January 2012 Appellate Brief, the Veteran's representative asserted that the current severity of the Veteran's symptoms warranted a higher evaluation of 50 or 70 percent disabling. In support of that contention, the representative asserted that the February 2011 VA examiner failed to adequately consider independent medical evidence and lay statements from the Veteran's wife noting his behavior symptoms. The Brief also notes that between April 2010 and June 2011, the Veteran's GAF scores ranged from 49-50.

In April 2013, the Veteran underwent a private psychological examination. During the evaluation, the Veteran reported the experience of guilt, nightmares/re-experiencing, and panic, sensitivity to noise and sleep disturbance/thrashing in his sleep. He also noted a decreased ability to engage emotionally and an inability to relate to his family. The examination report referenced VA treatment records which show a history of psychiatric symptoms including depressive ideation, negative thinking, irritability, avoidance, and difficulty with attention/concentration to include completing basic household tasks and maintaining good hygiene. The Veteran also reported a prior history of alcohol abuse, to include consumption of 5-6 drinks per day. The Veteran reports recent use limited to 1-2 drinks per day to induce sleep. 

On examination, the Veteran was described as anxious, hesitant, and guarded when discussing emotional symptomatology as related to service. Given the Veteran's impaired ability to readily discuss emotional symptoms and reliance on direct questioning, the examiner opined that it would be difficult to ascertain a full clinical picture. It was noted, however, that the Veteran's symptoms were clearly documented and the impact on his daily living had been apparent for many years. Thus, the examiner concluded that the Veteran's symptoms were consistent with PTSD, Major Depressive Disorder (MDD), and Alcohol Abuse (in partial remission). The Veteran's pursuit of independent work was noted as likely resulting from the Veteran's avoidance due to heightened discomfort/irritability around others, including co-workers. Oral medications such as Trazadone and Sertraline were listed as current treatments for sleep disturbance and the Veteran's mental health symptoms.

In an August 2013 general psychiatric medical assessment note, the Veteran reported ongoing symptoms including sleep disturbance, nightmares, flash backs, and thrashing in his sleep. He also reported loss of pleasure, feelings of hopelessness, and decreased energy. Other reported symptoms include social isolation, difficulty with daily life tasks, feelings of anxiousness, and an exaggerated startled response. 

The Board notes that the Global Assessment of Functioning (GAF) is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV)). 

GAF scores ranging from 41 to 50 illustrate serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning. 

Scores ranging from 51 to 60 reflect more moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers).

Here, the Veteran asserted due to his history of GAF scores of 49-50, which indicates serious impairment in social, occupational or school functioning, his current symptomology more closely approximates a higher rating of 50 or 70 percent disabling. 

While the Board has considered the findings rendered in the February 2011 VA examination, a review of the Veteran's medical history prior to February 16, 2017, reveals symptomology that more closely approximates an evaluation of 50 percent disabling for the Veteran's PTSD. More specifically, during the stated time period, the evidence reveals that that Veteran consistently suffered from problems with occupational and social impairment, to include impaired judgment, attention and memory, disturbances of mood and motivation, isolation/ avoidance, and increasingly strained relationships. Moreover, the Veteran's unpredictable mood and irritability resulted in his wife relocating from the marital bedroom and reports of stress, discomfort and caution while endeavoring to peacefully co-exist in their shared residence. The Board finds the aforementioned lay statements both probative and credible.

In light of the foregoing, the Board finds that the Veteran's social and occupational impairment is better contemplated by a 50 percent disability rating prior to February 16, 2017, which, as previously discussed, is warranted where there are symptoms of occupational and social impairment with reduced reliability and productivity due to disturbances of motivation and mood and difficulty in establishing and maintaining effective work and social relationships, among other things. 38 C.F.R. § 4.130, DC 9411 (2017). However, a higher disability rating of 70 percent for this period is not warranted, as such a rating contemplates a more severe level of occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); or an inability to establish and maintain effective relationships. Id. 

In this case, the record does not reveal that the Veteran displayed occupational and social impairment warranting an evaluation in excess of 50 percent for the period prior to February 16, 2017, as he consistently denied suicidal ideations and was found to display normal speech and thought processes with notable social impairments.

Based on the foregoing, the Board finds that an increased disability rating of 50 percent for the Veteran's service-connected PTSD for the period prior to February 16, 2017, is warranted. However, the preponderance of the evidence of record demonstrates that a higher evaluation of 70 percent is not warranted at any time prior to February 16, 2017. 

Rating in excess of 70 percent disabling

In February 2017, the Veteran underwent a subsequent VA examination to assess the current severity of his symptoms related to PTSD. 

During the clinical evaluation, the Veteran indicated that his current symptoms impact his daily life, functioning, and relationships with family. He reported difficulties in his relationship with his wife of 47 years and stated that they barely speak. According to the Veteran, his wife has a prior history of infidelity. Other reported symptoms include feeling discouraged, fear of further fainting spells, progressively worsening periods of irritability/anger and aggressive behavior (i.e. punching walls, throwing objects, breaking objects, yelling, etc.). The Veteran noted problems with his attention span and concentration (described as "about 15 to 20 seconds") and an inability to "function as a person." He also stated, "I get depressed about everything." The Veteran also indicated that he experiences fainting spells and attributes them to exposure to Agent Orange in Vietnam and abuse of alcohol. Alcohol consumption was reported approximately six days per week, to include 3 glasses of gin or vodka within a 2 hour period. Current treatments include oral medications and participation in weekly supportive group therapy for Vietnam Veterans with PTSD. 

On examination, the examiner noted current symptoms including depressed mood, anxiety, suspiciousness, near-continuous panic or depression affecting the ability to function independently, appropriately and effectively, chronic sleep impairment, impairment of short- and long-term memory (e.g. retention of only highly learned material, while forgetting to complete tasks), impaired judgment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, and suicidal ideation. Other symptoms include hypervigilance/avoidance, night sweats, decreased energy and appetite, nightmares, and problems with attention and concentration.

During the clinical evaluation, the Veteran was observed as attentive, cooperative, and casually dressed with notable deficiencies in grooming and hygiene. His thought patterns and expressions were linear, relevant and logical. The Veteran denied recent experiences with panic attacks. His affect was congruent with mood and session content. He admitted weekly suicidal thoughts and feelings of hopelessness, but denied a current intent to harm himself or others. No prior suicide attempts or the experience of delusions/hallucinations were reported. Although the Veteran was not deemed an imminent risk to himself or others, the examiner noted that his risk level should be closely monitored.

On review of the record, the examiner indicated that any discrepancy between the current examination and the February 2011 examination likely resulted from the availability of additional evidence (including the lay statement from the Veteran's wife and the Independent Psychological Examination completed in April 2013) and the Veteran's more honest discussion and report of symptoms and functioning during the current examination. The Veteran was diagnosed with PTSD, MDD, and mild alcohol use disorder. 

A recent a general psychiatric medical assessment note, dated September 2017, described the Veteran as alert, with an "ok" mood, and no suicidal or homicidal ideation or intent. Other notes describe the Veteran as cooperative and appropriately dressed, with no evidence of abnormal thought processes. Ongoing problems with sleep disturbance, isolation, and lack of motivation/fatigue, depression, nightmares, memory loss, and difficulties in familial relationships were reported. The Veteran continues to pursue the combination of individual and group therapy and use oral prescription medications as apart his treatment plan.

Based upon the forgoing, the Board finds that the Veteran's PTSD symptoms for the period from February 16, 2017, onward more closely approximate the rating criteria for a 70 percent disability evaluation. More specifically, the Veteran's February 2017 VA examination and subsequent mental health treatment notes chronicle ongoing problems with depression, mood swings, irritability/impulse control, impaired memory, judgement and concentration. The record also shows that the Veteran exhibited an inability to adapt to stressful circumstances and difficulty with establishing/maintaining relationships. Moreover, the Veteran acknowledged a history of panic attacks, flashbacks, and suicidal ideation. 

On these facts, however, a higher disability rating of 100 percent is not warranted. As previously indicated, an evaluation of 100 percent disabling requires total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130, Diagnostic Code 9411 (2017). Review of the evidence does not reveal symptomology consistent with the criteria required for the next higher evaluation. Therefore, the Board finds that a 70 percent rating more closely approximates the Veteran's disability picture for the relevant period. Review of the record does not reveal that the Veteran is incapable of working and he has maintained some relationships, although strained at times. Thus, the evidence demonstrates that the Veteran is not "totally" impaired occupationally and socially. 

The Board has carefully considered the Veteran's contentions and his Wife's lay statement with respect to the nature of the Veteran's PTSD. Lay statements to describe certain associated symptomatology are generally deemed competent. Here, the Veteran's history and reports of symptom severity have been considered, including as presented in the medical evidence discussed above. Ultimately, the competent medical evidence offering detailed specific findings pertinent to the rating criteria is the most probative evidence with regard to evaluating the pertinent symptoms of the Veteran's PTSD. As such, while the Board accepts the Veteran's lay contentions (and those of his Wife) with regard to the matters he is competent to address, the Board relies upon the competent medical evidence with regard to the specialized evaluation of functional impairment, symptom severity, and details of clinical features of the service-connected conditions at issue.

Having resolved all reasonable doubt in favor of the Veteran, the Board finds that an initial rating of 50 percent is warranted prior to February 16, 2017, and that a 70 percent evaluation is warranted thereafter for PTSD. See 38 U.S.C. § 5107(b). To this limited extent, the Veteran's claim is granted. However, the preponderance of the evidence demonstrates that an initial evaluation in excess of 50 percent prior to February 16, 2017, and an evaluation in excess of 70 percent thereafter are not warranted. As such, this aspect of the Veteran's claim must be denied.


ORDER

Entitlement to an initial rating of 50 percent disabling, but no higher, for service-connected PTSD, prior to February 16, 2017, is granted.

Entitlement to an evaluation in excess of 70 percent disabling for service-connected PTSD from February 16, 2017, is denied.


REMAND
Earlier Effective Date

The Veteran is currently service-connected for PTSD, effective as of May 26, 2009. In October 2017, VA received a copy of a notice of disagreement from the Veteran's representative indicating that they disagreed with the effective date of the award. However, a statement of the case regarding the issue of entitlement to an effective date prior to May 26, 2009, for the grant of service connection for PTSD has yet to be issued. A remand for this action is necessary. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 19.26, 19.29, 19.30; Manlincon v. West, 12 Vet. App. 238 (1999).

Accordingly, the case is REMANDED to the AMC for the following action:

The RO should issue the Veteran and his representative (if any) a statement of the case on the issue of entitlement to an effective date prior to May 26, 2009, for the grant of service connection for PTSD. The Veteran should be given the opportunity to thereafter perfect an appeal on this issue by filing a timely substantive appeal. The claim will thereafter be subject to appellate review only if the appeal has been properly perfected.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).


____________________________________________
B. MULLINS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs