Citation Nr: 1761244 
Decision Date: 12/21/17 Archive Date: 01/02/18

DOCKET NO. 12-07 336 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Reno, Nevada


THE ISSUE

Entitlement to an increased rating for posttraumatic stress disorder (PTSD) in excess of 70 percent.


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

C. J. Cho, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Marine Corps from November 1967 to July 1969. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Reno, Nevada. 

In January 2007, the RO originally granted the Veteran's claim for entitlement to service connection for PTSD and assigned an evaluation of 50 percent, effective February 9, 2006.

On October 13, 2010, the Veteran filed a claim for an increased rating for PTSD. In July 2011, the RO granted an increased rating to 70 percent, effective October 13, 2010, the date of the Veteran's increased rating claim. In August 2011, the Veteran filed a notice of disagreement (NOD), asserting that he was entitled to a 100 percent rating. A Statement of the Case was issued in March 2012, and the Veteran perfected his appeal with the submission of a substantive appeal in March 2012.

In January 2015, the Board remanded the claim to obtain Social Security Administration (SSA) records. The SSA records were subsequently obtained and have been associated with the claims file. 

In April 2017, the Board remanded the claim again, but for evidentiary development, to include a new VA examination. A VA examination was accordingly accomplished in June 2017. The claim now returns before the Board.

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 369-7 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).





FINDING OF FACT

For the period from October 13, 2009, total occupational and social impairment due to PTSD has not been shown.


CONCLUSION OF LAW

For the period from October 13, 2009, criteria for a rating higher than 70 percent, for PTSD, have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (West 2012); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.3, 4.7, 4.10, 4.130, Diagnostic Code 9411 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA)

As an initial matter, the Board finds that VA's duty to assist has been satisfied with regard to the issue on appeal. The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C. § 5102, 5103, 5103A, 5107, 5126 (West 2012); 38 C.F.R. § 3.102, 3.156(a), 3.159, 3.326(a) (2017). The evidence of record includes service treatment records, VA treatment records, SSA records, lay statements submitted by the Veteran, and the reports of various VA examinations. VA has made every reasonable effort to obtain all records relevant to the Veteran's claim, and furthermore, has fully complied with the Board's most recent remand in April 2017.

Moreover, pursuant to the Board's remand in April 2017, the Veteran was most recently afforded a new VA examination in June 2017. For this examination, the Veteran's claims file was reviewed and the examiner considered the Veteran's complaints and provided findings of a thorough physical examination. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007) (holding an examination is considered adequate when it is based on consideration of the appellant's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's evaluation of the disability will be a fully informed one). The examiner also thoroughly followed the Board's April 2017 remand instructions for the examiner. See June 2017 VA examination opinion; see also Stegall v. West, 11 Vet. App. 268 (1998). 

Thus, the Board finds that the duty to assist has, therefore, been satisfied and there is no reasonable possibility that further assistance would be capable of substantiating the claims decided on appeal. 38 U.S.C. § 5103A (a)(2) (West 2012).


Increased Rating Claim

Legal Standard

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10.

If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower evaluation will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding a degree of disability is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The Veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995).

"Staged" ratings may be appropriate for any rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran is in receipt of a 70 percent effective October 13, 2010, pursuant to 38 C.F.R. § 4.130, Diagnostic Code (DC) 9411. All psychiatric disabilities are evaluated under a general rating formula for mental disorders.

Under the general rating formula, a 70 percent evaluation is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful situations (including work or a worklike setting); and inability to establish and maintain effective relationships. Id. 

A total schedular rating of 100 percent is warranted when the disorder results in total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of mental and personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

The symptoms listed in the rating schedule are not intended to constitute an exhaustive list, but rather serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. See Mauerhan v. Principi, 16 Vet. App. 436 (2002). Nevertheless, all ratings in the general rating formula are associated with objectively observable symptomatology, and in Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (2013), the Federal Circuit stated that "a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration."

The Federal Circuit further noted that "§ 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas." Id. Thus, "[a]lthough the veteran's symptomatology is the primary consideration, the regulation also requires an ultimate factual conclusion as to the veteran's level of impairment in 'most areas.'" Id. at 118.

As such, the Board will consider both the Veteran's specific symptomatology as well as the occupational and social impairment associated with the DC to determine whether an increased evaluation is warranted.

Moreover, a Global Assessment of Functioning (GAF) score represents "the clinician's judgment of the individual's overall level of functioning" and is "useful in planning treatment and measuring its impact [ ] and in predicting outcome. . . . The [GAF] Scale is to be rated with respect only to psychological, social, and occupational functioning." Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed.1994) (DSM-IV); see Richard v. Brown, 9 Vet. App. 266, 267 (1996). Use of the GAF Scale, however, has been abandoned in the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders because of, among other reasons, "its conceptual lack of clarity" and "questionable psychometrics in routine practice," and has been replaced by the World Health Organization Disability Assessment Schedule. Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013). 

As with all claims for VA disability compensation, the Board must assess the credibility and weigh all the evidence, including lay and medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Madden v. Gober, 125 F.3d 1477, 1481 (1997), cert. denied, 523 U.S. 1046 (1998).





Relevant Evidence

Here, the Veteran contends that he is entitled to an increased rating in excess of 70 percent for his service-connected PTSD. As the Veteran's claim for increased rating was received on October 13, 2010, the relevant focus for adjudicating his claim is the period beginning October 13, 2009, one year prior to the claim for increase. Hart v. Mansfield, 21 Vet. App. 505 (2007); 38 C.F.R. § 3.156 (b). 

After reviewing all of the evidence, the Board finds that the overall social and occupational impairment caused by the Veteran's PTSD most nearly approximates impairment warranting the currently assigned 70-percent rating, but no higher, for the period beginning from October 13, 2009.

Importantly, the record reflects that for the period from October 13, 2009 to the present, Las Vegas VA Medical Center (VAMC) records show that the Veteran's PTSD symptoms include anxiety, almost constant anger, nightmares, restless sleep, pervasive thoughts, hypervigilance to sounds and movements, hopelessness, mildly impaired concentration, and trouble maintaining relationships. These records also report that the Veteran denied experiencing delusions, hallucinations, suicidal ideation, and homicidal ideation. He is noted in these records as appearing neatly dressed. 

Medical records that were obtained from the SSA, show that for the period from October 13, 2009 to the present, the Veteran's PTSD symptoms include anxiety, anger, flashbacks and nightmares, restless sleep, and hypervigilance to sounds. He is noted in these records as appearing neatly dressed and acting appropriate in situations. He was also assessed in a Mental Residual Function Capacity Assessment report as having "not significantly limited" abilities in most areas, including the abilities to remember locations and work-like procedures and to understand and remember very short and simple instructions. Furthermore, he was assessed as "moderately limited" in the abilities to understand and remember detailed instructions and to carry out detailed instructions.

In January 2010, the Veteran presented to a VA Compensation and Pension Examination (VA examination). The examiner diagnosed the Veteran with, inter alia, PTSD, and reported that upon mental status examination, the Veteran possesses no impairment in thought process or communications; possesses no delusional ideas; admits to many vivid flashbacks that almost look like hallucinations; displayed no inappropriate behavior during the interview; is able to maintain personal hygiene and other basic activities of daily living; is oriented to person, place, and time; denies any obsessive or ritualistic behavior; possesses a rate and flow of speech that is relevant, logical with no obscure speech patterns; possesses some impulse control problem with gambling twice a month; experiences depression, depressed mood and anxiety all the time; and experiences impaired sleep. The Veteran also reported to the examiner that his memory is not as good as before as he forgets names of people. Furthermore, he admitted to having had suicidal thoughts, but he also denied any homicidal thoughts or ideas or plans. The January 2010 examiner assigned the Veteran a GAF score of 40.

As to his occupational or social functioning, the examiner determined that the Veteran had reduced reliability and productivity due to PTSD signs and symptoms. He has had three jobs that he had terminated because of his temper flare-ups at work. He actually had not worked since April 2008. He has no socialization. He has no significant leisure activity. He has been using alcohol regularly. He gambles sporadically. He has persistent frequent road rage. He has markedly impaired sleep. He has frequent intrusive memories. He has persistent nightmares occurring three times a week usually about Vietnam experiences.

In March 2011, the Veteran was evaluated at a Review Examination for PTSD. The examiner diagnosed the Veteran, in part, with PTSD, and reported that upon mental status examination, the Veteran's thought processes and communication are within normal limits; he is not hallucinating or delusional; his eye contact and interaction to the session are within normal limits; he is not suicidal or homicidal, but he does get angry easily; he is able to maintain personal hygiene and activities of daily living; he is oriented to time, place and person; his memory is not impaired long or short-term; he does not have obsessive or ritualistic behaviors; and his speech is relevant, logical, coherent and goal-oriented. The March 2011 examiner assigned the Veteran a GAF score of 45.

In December 2012, the Veteran presented to a Review PTSD Examination. The examiner diagnosed the Veteran with PTSD and reported that the Veteran's diagnosis should be construed to include depressive symptoms and alcohol dependence (in remission). Upon mental status examination, the Veteran exhibited occupational and social impairment with deficiencies in "most areas" as opposed to a "total" occupational and social impairment. The examiner further reported the Veteran's PTSD symptoms as being: depressed mood, anxiety, suspiciousness, chronic sleep impairment, mild memory loss, such as forgetting names, directions or recent events; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; and difficulty in adapting to stressful circumstances, including work or a worklike setting. The December 2012 examiner assigned the Veteran a GAF score of 48. 

Finally, the Veteran presented to another Review PTSD Examination in June 2017. The June 2017 examiner reported that the Veteran exhibited occupational and social impairment with deficiencies in "most areas" as opposed to a "total" occupational and social impairment. He noted the Veteran's PTSD symptoms as being: depressed mood, anxiety/panic attacks that occur weekly or less often, near-continuous panic or depression affecting the ability to function independently, appropriately and effectively, chronic sleep impairment, mild memory loss, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances, including work or a work like setting. He also opined that in his expert opinion that although the GAF score is no longer in use, it is his estimate that the Veteran continues to function in a range that would have been interpreted as having a GAF score in the 40s.

For the period from October 13, 2009 to the present, the Veteran was given GAF scores that range from 35 to 40, which the exception of a GAF score of 45 that he was assigned in December 2009. See VAMC records dated December 2009, November 2010, March 2011, April 2011, September 2011, November 2011, March 2012, April 2012, May 2012, and June 2012. GAF scores in this range reflect some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV).

Legal Analysis

From a review of the aforementioned medical evidence, the Board finds that the preponderance of the evidence reflects that the Veteran's PTSD has been productive of occupational and social impairment with deficiencies in most areas throughout the entire period on appeal. The VA examiners in January 2010, March 2011, December 2012, and June 2017, reported that he had reduced reliability, and deficiencies in most areas, but did not report that the Veteran had total social and occupational impairment.

Throughout the rating period, the evidence reflects that the Veteran has suicidal ideation, as reported in the SSA records and the various VA examination reports. However, to qualify for a 100 percent evaluation, there must be evidence of a persistent danger of hurting self, which the medical evidence does not support. See January 2010 VA examination report ("[The Veteran] admitted to having had suicidal thoughts, but [he also] denies any homicidal thoughts or ideas or plans."); see SSA records; see, e.g., June 2017 VA examination report ("[The Veteran] acknowledged a remote history of suicidal ideation, but did not report any history of suicide attempt. He described some recent thoughts of death, but did not report any intent or plan to harm himself. He stated that family concern with deter self-harm."). He also has not subscribed to hurting others.

As to the Veteran's memory, the Veteran has reported that it is "not as good as before" as he "forgets names of people." Nevertheless, the January 2010 VA examiner found that despite the Veteran's self-report that he forgets the names of people, the Veteran is nevertheless "oriented to person, place, and time" and is able to maintain basic activities of daily living. Notably, the June 2017 examiner reported the severity of the Veteran's memory loss as mild. This level of impairment is contemplated by lower evaluations, such as the 30 and 50 percent evaluations, which respectively provide: "mild memory loss (such as forgetting names, directions, recent events)" and "impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks)." Indeed, there is no evidence of record that he cannot remember his name or names of family members.

The Board also acknowledges that the Veteran reported that he experienced "many vivid flashbacks that almost look like hallucinations." However, the Board notes that "persistent delusions or hallucinations," or anything similar (see Mauerhan, 16 Vet. App. at 436), are not present to the requisite levels of frequency, severity, and duration, that would allow for a higher rating of 100 percent. See id.; see also Vazquez-Claudio, 713 F.3d at 117. Here, the January 2010 VA examiner reported that the Veteran possesses "no impairment in thought process or communications" and possesses "no delusional ideas."

Throughout the appeal period there is evidence of impaired impulse control. The March 2011 VA examination report reflects that the Veteran admits to "getting angry easily," however, this symptom is fully accounted for in the 70 percent evaluation criteria. See 38 C.F.R. § 4.130, Diagnostic Code (DC) 9411 ("impaired impulse control, such as unprovoked irritability with periods of violence"). 

In short, the record, throughout the rating period, demonstrates significant impairment associated with PTSD, especially in areas such as work, social and family relations, judgment, thinking, and mood, which more nearly approximates a rating of 70 percent. See 38 C.F.R § 4.7. However, a 100-percent rating is not warranted, as the preponderance of the evidence is against a finding of total occupational and social impairment due to PTSD at any time during the period on appeal. As noted above, the Veteran regularly appeared at VA appointments well-groomed and with good hygiene, and was consistently alert and socially appropriate. He has denied persistent delusions or hallucinations, and medical evidence of record indicates that he is able to communicate clearly. There is no evidence of psychosis. Indeed, the record shows that the Veteran has been orientated to time and place. Furthermore, although the Board recognizes that the Veteran has reported suicidal ideation, there is no evidence to indicate that he is in persistent danger to himself or anyone else.

Notably, no examiner found, no medical records show, and the Veteran himself did not assert, that the Veteran is or has been experiencing any symptom specifically contemplated, or similarly contemplated, under the 100-percent rating of DC 9411, to the requisite levels of frequency, severity, and duration, that would allow for a higher rating of 100 percent. See also Vazquez-Claudio, 713 F.3d at 117. 

In light of the above, the Board finds that the Veteran's PTSD symptoms, considered in isolation from his other service-connected disabilities, do not demonstrate total impairment, as illustrated by the criteria for a 100-percent rating. 

Furthermore, while GAF scores are no longer used, the Board also acknowledges the assignment of GAF scores from 35 to the 40s for the Veteran during the appeal period, when it was appropriate. According to DSM-IV, a GAF score ranging from 41-50 reflects severe symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Here, however, none of the GAF scores assigned during the appeal period, provide the basis for assigning a 100-percent rating. When all of the evidence and findings contained therein are considered, including the absence in the objective medical evidence and the absence in the Veteran's own statements showing that the Veteran has exhibited during the appeal period any symptoms contemplated under the 100-percent rating of DC 9411, the Board finds that the overall evidence establishes a level of impairment that is consistent with the Veteran's currently assigned 70-percent rating.

The Board has also considered the Veteran's statements regarding his PTSD symptoms. The Veteran's statements are competent evidence as to the symptoms of his PTSD as this comes to him through his senses. Moreover, his statements are credible to the extent that they are consistent with the medical evidence of the record. However, his statements are not competent evidence as to a specific level of disability according to the appropriate diagnostic codes. See Robinson v. Shinseki, 557 F.3d 1355 (2009). Evidence concerning the nature and extent of the Veteran's PTSD has been provided by the medical personnel who have examined him at various times during the current appeal and who have rendered pertinent opinions in conjunction with the physical evaluations. The medical findings as provided in the examination reports directly address the criteria under which this type of disability is evaluated. The Board, therefore, finds the medical findings to be of a greater probative value as to the current severity of the Veteran's PTSD than his statements. Given such, the Board does not find that a rating of 100 percent, as the record stands, is warranted.

In sum, the evidence shows that the overall impairment caused by the Veteran's PTSD symptomatology, while not squarely within the symptomatology for a 70-percent rating, as his symptomatology is also consistent with criteria in ratings lower than 70 percent, the Board finds it more nearly approximates occupational and social impairment with reduced reliability and productivity, for the entire period on appeal. Therefore, an increase in excess of 70 percent for PTSD must be denied.


ORDER

Entitlement to a rating in excess of 70 percent for PTSD is denied.








____________________________________________
YVETTE R. WHITE
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs