﻿Citation Nr: AXXXXXXXX
Decision Date: 12/14/18 Archive Date: 12/14/18

DOCKET NO. 180922-414
DATE: December 14, 2018
ORDER
Entitlement to an effective date earlier than December 17, 2015 for the grant of service connection for radiculopathy, left lower extremity, associated with lumbar degenerative disc disease is denied. 
Entitlement to an initial rating in excess of 10 percent for radiculopathy, left lower extremity, associated with lumbar degenerative disc disease is denied. 
Prior to July 22, 2015, an initial rating in excess of 50 percent for a mood disorder with posttraumatic stress disorder (PTSD) is denied. 
Between July 22, 2015 and April 3, 2017, a 70 percent rating for a mood disorder with PTSD is granted.
Since April 4, 2017, a rating in excess of 70 percent for a mood disorder with PTSD is denied.
Entitlement to separate compensable ratings for both a mood disorder and PTSD is denied. 
FINDINGS OF FACT
1. A claim for entitlement to service connection for left lower extremity radiculopathy was received by the RO on December 18, 2006. 
2. Symptoms of left lower extremity radiculopathy were first noted in a VA treatment recorded dated December 17, 2015. 
3. Throughout the period on appeal, the Veteran’s radiculopathy, left lower extremity, associated with lumbar degenerative disc disease resulted in no more than mild, incomplete paralysis of the common peroneal nerve. 
4. Prior to July 22, 2015, the Veteran’s mood disorder with PTSD was manifested by occupational and social impairment with reduced reliability and productivity. 
5. The medical evidence first reflects that his mood disorder with PTSD resulted in occupational deficiencies in most areas on July 22, 2015; total occupational and social impairment due to his mood disorder with PTSD has not been demonstrated at any point during the appeal period. 
6. Separate compensable ratings for both a mood disorder and PTSD would amount to pyramiding. 
CONCLUSIONS OF LAW
1. The criteria for establishing entitlement to an effective date prior to December 17, 2015 for the grant of service connection for radiculopathy, left lower extremity, associated with lumbar degenerative disc disease have not been met. 38 U.S.C. §§ 5103, 5103A, 5107, 5110; 38 C.F.R. § 3.400.
2. The criteria for an initial rating in excess of 10 percent for radiculopathy, left lower extremity, associated with lumbar degenerative disc disease have not been met. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.124a, Diagnostic Code (DC) 8521. 
3. Prior to July 22, 2015, the criteria for an evaluation in excess of 50 percent for a mood disorder with PTSD were not met. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.102, 3.159, 4.14, 4.126, 4.130, DC 9435.
4. From July 22, 2015, to April 3, 2017, the criteria for a disability rating of 70 percent for a mood disorder with PTSD are met. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.102, 3.159, 4.126, 4.130, DC 9435.
5. From April 4, 2017, the criteria for a disability rating higher than 70 percent for a mood disorder with PTSD are not met. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.102, 3.159, 4.14, 4.126, 4.130, DC 9435.
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty from November 1969 to May 1972. 
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. 
Earlier Effective Date
1. Entitlement to an effective date earlier than December 17, 2015 for the grant of service connection for radiculopathy, left lower extremity, associated with lumbar degenerative disc disease is denied. 
A May 2017 rating decision granted a 10 percent rating for radiculopathy of the left lower extremity, effective December 17, 2015. The Veteran contends that an effective date of December 18, 2006 is warranted (as that is his date of claim). The Board has reviewed hundreds of pages of records and a complicated procedural history with respect to this particular issue. The Board finds the issue on appeal with respect to his radiculopathy of the left lower extremity stems from a December 18, 2006 claim filed by the Veteran. 
Except as otherwise provided, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be on the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. §§ 3.400.
The effective date of an evaluation and award of compensation on an original claim for compensation will be the day following separation from active duty service or the date entitlement arose if the claim is received within one year after separation from service. Otherwise, the effective date will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(b)(2).
The Veteran separated from active service in May 1972. He submitted a claim of entitlement to service connection for a left leg disability (following a final unappealed December 1980 rating decision) on December 18, 2006. Thus, that is the date of claim. The record, including the service medical records, does not show treatment for lower left radiculopathy until a December 17, 2015 VA treatment record. In fact, at a June 2015 VA examination the Veteran demonstrated a normal sensory examination of his left lower side and a negative left straight leg test. He additionally denied constant pain, intermittent pain, paresthesias and/or dysesthesias, and numbness of his left lower extremity at that time. The VA examiner noted there was involvement of the nerve roots on the right side only. Based on a review of hundreds of pages of documents in the claims file, the Board finds that evidence of left lower extremity radiculopathy did not arise prior to the initial diagnosis in the December 17, 2015 VA treatment record. Therefore, the effective date of December 17, 2015 is appropriate. 
With respect to the earlier effective date claim, the Veteran has been granted an effective date of the date entitlement arose. The Board finds that an earlier effective date for service connection for radiculopathy of the left lower extremity is not warranted because, as noted above, the standard is the date of receipt of claim or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400(b). The Board finds that there is simply no indication in the record that entitlement arose at any time prior to December 17, 2015, for left lower extremity radiculopathy. 
In sum, the presently assigned effective date of December 17, 2015, is appropriate and there is no basis for an award of service connection for radiculopathy of the left lower extremity prior to that date. As the preponderance of the evidence is against the claim, the claim must be denied. 38 U.S.C. § 5107(b) (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).
Increased Ratings
Disability ratings are determined by the application of the VA’s Schedule for Rating Disabilities. Separate diagnostic codes identify the various disabilities, which are based, as far as practically can be determined, on average impairment in earning capacity. 38 U.S.C. § 1155 (2012); 38 C.F.R. Part 4 (2018). When rating a service-connected disability, the entire history must be borne in mind. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). The Board will also consider entitlement to staged ratings to compensate for times since filing the claims when the disabilities may have been more severe than at other times during the course of the claims on appeal. Fenderson v. West, 12 Vet. App. 119 (1999).
Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2018).
2. Entitlement to an initial rating in excess of 10 percent for radiculopathy, left lower extremity, associated with lumbar degenerative disc disease is denied. 
The rating provisions of DC 8521 provide that mild incomplete paralysis of the external popliteal nerve (common peroneal) is rated as 10 percent disabling; moderate incomplete paralysis is rated 20 percent disabling; and severe incomplete paralysis is rated 30 percent disabling. 38 C.F.R. § 4.124a. Complete paralysis of the external popliteal nerve, involving foot drop and slight droop of first phalanges of all toes, cannot dorsiflex the foot, extension (dorsal flexion) of proximal phalanges of toes lost; abduction of foot lost, adduction weakened; anesthesia covers entire dorsum of foot and toes, is rated 40 percent disabling. Id. When the involvement is wholly sensory, the rating should be for the mild, or at most the moderate degree. Id.; Miller v. Shulkin, 28 Vet. App. 376 (2017) (finding that the plain language of the note to § 4.124a contains no mention of non-sensory manifestations and declining to read into the regulation a corresponding minimum disability rating for non-sensory manifestations).
The Veteran’s left lower extremity radiculopathy associated with lumbar degenerative disc disease is rated as 10 percent disabling under DC 8521 for the period on appeal. 
At a June 2015 VA examination, the Veteran demonstrated a normal sensory examination of his left lower side and a negative left straight leg test. He additionally denied constant pain, intermittent pain, paresthesias and/or dysesthesias, and numbness of his left lower extremity at that time. The VA examiner noted there was involvement of the nerve roots on the right side only. At a December 2015 VA treatment visit the Veteran complained of paresthesias in his legs. At a February 2016 VA treatment visit the Veteran reported tingling and numbness in his left leg. The Board finds that this evidence does not reflect moderate incomplete paralysis of the external popliteal nerve (common peroneal). 
Based on a thorough review of the record the Board finds that the Veteran’s left lower extremity radiculopathy is most consistent with a 10 percent disability rating for the entire period on appeal. As such, the Board finds that the preponderance of the evidence is against any rating higher than 10 percent for his left lower extremity.
3. Entitlement to a rating in excess of 50 percent prior to April 4, 2017, and a rating in excess of 70 percent from April 4, 2017, to September 4, 2018, for a mood disorder with PTSD, to include whether separate compensable evaluations are warranted for a mood disorder and PTSD.
The Veteran’s claim for an increased rating for his service-connected mood disorder with PTSD was pending at the time his RAMP election notice was filed. The Board finds that his claim for an increased rating has been pending since his December 18, 2006 claim. The Board has recharacterized the issue as an increased rating claim, rather than earlier effective date claim, as the Veteran has already been awarded service connection for his acquired psychiatric disability back to his initial date of claim. 
In a May 2017 rating decision, the Veteran’s 50 percent rating was increased to 70 percent, effective April 4, 2017. The effective date of the increased rating for the Veteran’s acquired psychiatric disability corresponds to an April 4, 2017 VA examination. 
As the Board will note in more detail below, the Board finds that the evidence first reflects an acquired psychiatric disability most consistent with a 70 percent disability rating as early as July 22, 2015. As such, the Board will essentially change the effective date of the 70 percent rating to July 22, 2015. The Veteran claims the current ratings do not accurately reflect his condition during those time periods.
Under Diagnostic Code 9435, a 50 percent rating is warranted when there is occupational and social impairment, but with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete task); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, DC 9435.
A 70 percent rating is warranted when there is occupational and social impairment with deficiencies in most areas, such as work, school, family relationships, judgment, thinking or mood, due to such symptoms as: suicidal ideation; obsessional rituals that interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. Id.
The maximum rating of 100 percent requires total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id.
The specified factors for each incremental psychiatric rating are not requirements for a particular rating but are examples providing guidance as to the type and degree of severity, or their effects on social and work situations. Thus, the analysis should not be limited solely to whether the symptoms listed in the rating scheme are exhibited. Rather, consideration must be given to factors outside the specific rating criteria in determining the level of occupational and social impairment. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). 
The classification outlined in the portion of VA’s Schedule for Rating Disabilities that addresses service-connected psychiatric disabilities is based upon the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, of the American Psychiatric Association (DSM-5). 38 C.F.R. § 4.130 (2018). 
In assessing the evidence of record, it is important to note that the Global Assessment of Functioning (GAF) score is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Richard v. Brown, 9 Vet. App. 266, 267 (1996). Effective August 4, 2014, the DSM-IV was superseded by a new fifth edition that significantly changed diagnostic metrics for mental illnesses. In pertinent part, the DSM-5 eliminated the GAF scores used in the DSM-IV. It was recommended that the GAF be dropped from DSM-5 for several reasons, including its lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice. 
After a review of all of the evidence prior to July 22, 2015, the Board finds that a rating in excess of 50 percent is not warranted. At a November 2011 VA examination, the VA examiner summarized the Veteran’s acquired psychiatric disability as resulting in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. The Veteran reported at that time that he was married with one stepson and one daughter who reside independently. He reported that he had one grandson who resided with him and one granddaughter who lives next door. A GAF score of 55 was reported. The Board has also reviewed outpatient treatment records during this time period. Significantly, the evidence prior to July 22, 2015 does not reflect an acquired psychiatric disability that results in occupational and social impairment with deficiencies in most areas. The Board finds that the evidence of record prior to July 22, 2015 is most consistent with a 50 percent disability rating. 
The Board further finds that symptomatology reported on a July 22, 2015 VA Mental Health Consult are most consistent with a 70 percent rating. The Board thus finds that a rating of 70 percent has been warranted since that time. At the July 2015 VA treatment visit the Veteran reported intrusive thoughts about his time in service, being hypervigilant, a heightened startle response, avoiding crowds, difficulty being around people, and always sitting with his back to the wall at restaurants. The Veteran reported a lack of friends and distance from his family resulting in a withdrawn lifestyle. He additionally reported a bridge phobia and that he has not been able to drive over tall bridges. 
Nevertheless, a rating in excess of 70 is not warranted at any point since July 22, 2015. The Board finds that the evidence throughout the entire period on appeal does not manifest as total occupational and social impairment, due to such symptoms as (for example only): gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. The Veteran’s own reports at various evaluations regarding how his mood disorder with PTSD impacts him, overall, would provide additional evidence against this claim, clearly indicating the level of symptomatology cited within the 100 percent rating have not been met in this case. 
In summary, the Board finds that the Veteran’s mood disorder with PTSD more nearly approximates the rating criteria for a 70 percent rating, but no higher, as of July 22, 2015. 
Whether Separate Ratings Are Warranted
The Veteran is reminded that service connection has been established for both his mood disorder and PTSD, and that the rating assigned for this disability contemplates all of his current psychiatric symptomatology. The grant of a separate rating for his PTSD by itself would not affect his level of disability compensation as he is already being compensated for all of the psychiatric symptoms he experiences. An award of a separate compensable ratings for both his mood disorder and PTSD would result in impermissible pyramiding under 38 C.F.R. § 4.14. It is possible for an appellant to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; however, the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994). While the Veteran can be separately service-connected for different acquired psychiatric disorders, the overlapping psychiatric symptoms for each separate disability cannot be rated more than once. In the Veteran’s case, all his psychiatric symptoms have been already considered in the rating assigned for both his mood disorder and PTSD. Thus, separate ratings are not warranted.

 
CAROLINE B. FLEMING
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD A.M. Clark, Counsel